**UNITED STATES of America, Appellee,**

v.

**Robert Paul DORAN, Appellant.**

**No. 72-2362.**

United States Court of Appeals, Ninth Circuit.

July 10, 1973.

Lupe Martinez, Deputy Federal Public Defender (argued), Los Angeles, Cal., for appellant.

Jan Lawrence Handzlik, Asst. U. S. Atty. (argued), William D. Keller, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before MERRILL, KOELSCH and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

While approaching the boarding area for a United Air Lines flight from Los Angeles to Chicago, Customs Air Security Officers placed appellant under arrest after a search of his small carry-on bag revealed a quantity of narcotics. Found guilty in a court trial on three counts of violating 21 U.S.C. § 841(a)(1), he appeals. We affirm.

## FACTUAL BACKGROUND

On May 1, 1972, shortly before 1:00 P.M., the United Air Lines customer service representative was working at the boarding podium for the United flight to Chicago, checking passengers into the boarding area. At this time, appellant approached the boarding podium and handed his ticket to the representative. The representative observed the appellant's eyes and noticed that they were glassy and appeared to be rolling in an unusual manner. At the same time, the representative observed that appellant presented a youth fare ticket and that appellant appeared to be too old to qualify for that type of ticket. The representative was familiar with the Federal Aviation Administration's "profile" of one who might fit the pattern of a skyjacker. Doran fit this profile and the agent then designated him as a profile selectee by the placing of a notation on his ticket. Shortly thereafter, passengers began boarding the plane.

All passengers were required to walk through a magnetometer, a weapons detection device which reveals quantities of metal by setting up a magnetic flux wave between two poles. The magnetometer was so calibrated that the light signal attached to it would be illuminated only if larger masses of metal, such as the amount contained in a pair of handcuffs or a small pistol, were involved.

In due course, appellant approached the Customs Air Security Officer who was checking the tickets of passengers and spacing passengers for their walk through the magnetometer. The officer observed appellant's boarding pass and his demeanor and felt that appellant might have been under the influence of some substance, such as narcotics or alcohol. While he was passing through the magnetometer, the officer further observed that his gait was slow, loose and lethargic.

As appellant passed through the poles of the magnetometer, the device was alarmed as indicated by the reading on the meter and the activation of the warning light. Appellant was advised that he had alarmed the metal detector. He was asked to empty his pockets of all metal objects and then walk through the magnetometer without the small carry-on bag. Only a small cigarette lighter was on his person. When Doran walked through the magnetometer the second time, the light was not activated and there was only a small reading on the meter. The officer was then of the belief that substantial quantities of metal were contained in the light flight bag. He asked Doran's permission to examine the contents of the flight bag. There is a dispute over whether such permission was given or not. The officer testified that it was his belief that a weapon, which could be used in air piracy, might be contained in the bag. He had received extensive training and was aware that only a small amount of metal was necessary to detonate plastic explosives or dynamite. On opening the carry-on bag, which had a metal zipper, the officer observed a large clear plastic bag containing many red capsules which he immediately recognized as a barbiturate, commonly known as "reds." He immediately placed appellant under arrest and summoned other officers. An examination of the bag after the arrest revealed that it contained 5,000 red capsules known as Seconal, 100,000 amphetamine tablets and a small quantity of heroin.

## SIGNS

The following signs warning all passengers boarding the aircraft of a

search of their persons and luggage were on conspicuous display.

(1) A sign at the boarding podium warning all passengers that it was a federal crime to carry a concealed weapon aboard the aircraft.

(2) Immediately before reaching the magnetometer field in the boarding area, passengers were faced with a sign warning them that their baggage was subject to search.

(3) Additionally, the public address system warned all passengers that before boarding they were going to be searched by a weapons detection device.

## ISSUES PRESENTED

Appellant raises a number of objections to the search and subsequent arrest. They will be discussed in the order presented in the briefs.

### 1. *Probable Cause to Arrest.*

Doran suggests that there were two searches of his flight bag. The first by officer Green following the second walk-through of the magnetometer by Doran. This search disclosed the "reds" at the top of the bag. The second search was made after officer Green summoned officer Jerrell who then placed Doran under arrest. This search disclosed the amphetamines. (Shortly thereafter a third search by Agent Johnson disclosed the heroin).

It is clear that if the first search was valid, then the officers had probable cause to arrest Doran since officer Green recognized the "reds" as a controlled substance. It is equally clear that the subsequent searches were valid, though commenced without a warrant, since they were incident to a lawful arrest. United States v. Maynard, 439 F. 2d 1086 (CA9 1971).

█ Appellant makes much of the failure of the trial court to specifically find that probable cause for arrest existed. The record establishes probable cause beyond any shadow of a doubt. The failure of the trial court to make a finding as to a question whose answer is so painfully obvious is, at worst, harmless error. Rule 52(a), F.R.Crim.P.

While thus holding that the second and third searches were valid, such a determination is necessarily dependent upon the validity of the initial search. Appellant's next two contentions attack the validity of that search and will be discussed together.

### 2. *The Initial Search.*

Appellant complains that the trial court did not specifically find a valid consent to be searched and, secondly, did not hold that the search was valid as a "pat down" search of the type approved in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

It is quite true that the trial court did not find specifically that consent was present in this case. What it did find was that, under the facts and circumstances, the search was a reasonable one. Consent is only one of many grounds that could render such a search reasonable.

█ Recently, in a scholarly opinion by Judge Browning, this circuit explored the problems connected with airport searches and their reasonableness in United States v. Davis, 482 F.2d 893 (CA9, 1973). The conclusion there, that such searches are reasonable where limited in scope to the object of the anti-skyjacking program, is fully applicable here. On the basis of the conclusions reached in *Davis*, we hold that the search of appellant's bag was reasonable and that the motion to suppress was properly denied.[1]

---

1. In *Davis*, an exception to the general rule on searches was created in connection with airport boarding checkpoints. Such a search in a critical zone is comparable to those checkpoint searches approved in border cases [Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); United States v. Moreno, 475 F.2d 44, 51 (CA5 1973); Witt v. United States, 287 F.2d

3. *The Magnetometer.*

■ Appellant also complains of the magnetometer "search". While we think such examinations are reasonable under *Davis,* we also note that the magnetometer search has been approved by a number of other courts whose reasoning on this particular issue, which was not raised in *Davis,* we find persuasive. See, e. g. United States v. Slocum, 464 F.2d 1180 (CA3 1972); United States v. Bell, 464 F.2d 667 (CA2 1972); United States v. Epperson, 454 F.2d 769 (CA4 1972), cert. denied 406 U.S. 947, 92 S.Ct. 2650, 32 L.Ed.2d 334.

Moreover, the magnetometer produced nothing. At most, it directed attention to appellant's flight bag, but as held in *Davis,* the search of carry-on luggage is permissible under the circumstances found here. Thus, the magnetometer like the profile, *infra,* is no more than a gratuitous means by the government to reduce the number of persons searched. Since the bag could have been searched in any event, the use of the magnetometer is hardly grounds for suppression.

4. *The Profile.*

■ Appellant claims that he was entitled to an *in camera* showing of the FAA skyjacker profile. Since the profile was not necessary to support the search, we find that the refusal to disclose it was not error. With or without having been selected as a profilee, appellant would still have been subject to search, and the reasonableness of that search is not in any way dependant on the profile. United States v. Bell, 464 F.2d 667, 674–675 (CA2 1972) [Judge Friendly's concurring opinion].

5. *Consent in Fact.*

■ While not specifically raised by appellant, we deem it appropriate to consider the issue of consent in fact which was the basis of the remand in *Davis, supra.* In the fact pattern of that case, there was no indication that the appellant was aware of the search program being conducted and so, the court held, consent, either implied or actual, could not be found on the record. Here, the situation is reversed. The record clearly establishes that signs and public address warnings announcing that all passengers were subject to search were in use at the time appellant attempted to board.

The Supreme Court has recently stated that: " . . . [B]usinessmen engaged in such federally licensed and regulated enterprises accept the burden as well as the benefits of their trade. . . . The businessman in a regulated industry in effect consents to the restrictions placed upon him." Almeida-Sanchez v. United States, 413 U.S. 266, 271, 93 S.Ct. 2535, 2538 (1973). Here, appellant chose to engage in the regulated activity of bringing hand luggage on board a commercial aircraft. Having been exposed to the existence of the regulations and having chosen to participate in the activity, the implication of his consent is unavoidable.

## CONCLUSION

Airport search cases, such as this, present important constitutional questions in a new and somewhat troublesome context. While the magnitude and novelty of the issues require careful consideration, they are no bar to the expansion of established constitutional principles to the ever-changing face of criminal activity.

The judgment of conviction is affirmed.

389 (CA9 1961), cert. denied 366 U.S. 950, 81 S.Ct. 1904, 6 L.Ed.2d 1242] and those allowed in securing public buildings and courtrooms [See, e. g., Downing v. Kunzig, 454 F.2d 1230 (CA6 1972)]. The policy considerations would seem to be the same in all three situations.