UNITED STATES of America,
Plaintiff-Appellee,

v.

Barry H. CRAIN, Defendant-
Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Lenard REEVES, Defendant-
Appellant.

Nos. 72-1885, 72-1886.

United States Court of Appeals,
Ninth Circuit.

Sept. 4, 1973.

Richard D. Emery (argued), Prison Legal Services Project, Lowell K. Halverson, Seattle, Wash., for Barry H. Crain.

Richard D. Emery (argued), Prison Legal Services Project, Wesley G. Hohlbein, Seattle, Wash., for Lenard Reeves.

Bruce D. Carter, Asst. U. S. Atty. (argued), Stan Pitkin, U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Kevin C. McMahon, Robert T. Czeisler, ACLU, Seattle, Wash., for amicus curiae.

Before BARNES and CHOY, Circuit Judges, and JAMESON,* District Judge.

OPINION

BARNES, Circuit Judge:

The two appellants were indicted in a six count indictment, charging them in Count One with a conspiracy to pass and keep counterfeited notes (18 U.S.C. §§ 472 and 371); in three counts (Counts Two, Three and Five) of passing counterfeit notes (18 U.S.C. §§ 2 and 472), and two counts (Counts Four and Six) of

* Honorable William J. Jameson, United States District Judge, District of Montana, sitting by designation.

possessing counterfeit notes (18 U.S.C. §§ 2 and 472).

Prior to trial, a motion to suppress the counterfeit money was made, upon the theory certain evidence (the counterfeit notes) was the product of an illegal search and seizure. That motion was heard and denied. The trial resulted in a jury verdict of guilty. Crain received a concurrent sentence of 30 months on each count; and Reeves 5 years on each count, concurrent. Jurisdiction below rested on 18 U.S.C. § 3231, and here on 28 U.S.C. § 1291.

The alleged illegal search occurred as the result of airport antihijacking procedures.

On Monday, September 20, 1971, appellants appeared together at the Seattle Airport, seeking passage on Western Airlines flight No. 627. Reeves was ticketed under the name of "L. Reed", and Crain was ticketed under the name of "J. King."

The case of United States v. Charles Davis, aka Marcus Anderson, 482 F.2d 893 (1973), details the history of antihijacking efforts on the part of both the government, and the private airlines, commencing with voluntary screening in late 1968 or early 1969, the system then used was *first,* the use of the "profile"; *second,* the use of a magnetometer to detect the presence of metal; and *third,* a weapons search of persons and their carry-on luggage.

"As a part of this cooperative effort, United States deputy marshals and Customs Service agents were made available to carry out searches and make arrests. By September, 1970, approximately 400 United States deputy marshals were assigned to surveillance and search activities at airport boarding gates." United States v. Davis, *supra,* 482 F.2d at 899.

Nine days previously to September 20, 1971 the President of the United States had ordered surveillance equipment and techniques to be used at *certain* airports: In July of 1972 the requirement was extended by the President to *all* airports (*Id.*, 482 F.2d at 899–901).

Western Airlines (herein Western) was acting pursuant to its Tariff on file with the Civil Aeronautics Board (Suppression Ex. 1A), which provided:

"Carrier will refuse to transport or will remove at any point any passenger . . . who refused to permit search of his person or property for explosives, or a concealed deadly or dangerous weapon or article."

On September 20, 1971, signs were prominently displayed in the boarding area to advise passengers of the existence and operation of the antihijacking program (Suppression Exs. 1B and 1C),[1] and an announcement was made over the loud speaker that the program was being used. Both defendants denied having seen any warning signs.

At the Western gate, an employee of Western, one Saylor, who was operating the magnetometer, had been told both Crain and Reeves met the Federal Aviation Authority's profile test and were "profiles". Reeves, with his hand luggage triggered the magnetometer as he went through it. Crain did not. Reeves was requested to go through the magnetometer again without his hand luggage; and there was little or no reading of metal. Saylor requested permission to look through Reeves' suitcase and Reeves agreed and placed his suitcase on the table and opened it for inspection. (R.T. 133, 191–193; particularly 191 at 19–23; Court's finding at 277). Saylor proceeded to examine the contents of the suitcase.

Saylor asked Reeves what was in a paper bag and Reeves said "papers". When Saylor observed money in the paper bag, he showed this to Deputy U. S. Marshal Malcolm Knight who was standing nearby observing the boarding of the flight. Saylor asked Reeves what was in

---

1. "Passengers and baggage subject to search under federal law as an FAA safety regulation." (R.T. at 277).

a roll of newspapers in the bottom of the suitcase, and Reeves responded "some more paper", and more money was observed in the newspapers. When Knight observed the large amount of money in the suitcase and Saylor indicated his concern, Knight identified himself to Reeves, obtained Reeves' consent to look into the luggage (R.T. at 184–186) and continued to inspect ·the suitcase for weapons. During the course of the check for weapons, Knight observed a metal-toothed comb and a spray can. When Knight looked into the top of the suitcase, he observed a green opaque bag in the top of the suitcase and asked Reeves what was in the bag and "there was no comment from him." Knight asked this question three times, and still no comment. Knight testified:

"A  So at that point I opened the bag from the top and looked into it.

"Q  What did you observe?

"A  A green leafy substance resembling marijuana.

"Q  And what did you do at that point?

"A  I placed him under arrest. and handcuffed him."

Crain continued on the flight to San Francisco. Marshal Knight subsequently noticed that some of the money in the suitcase was counterfeit and notified the Secret Service.

Secret Service Agent Roy Nedrow met Western Flight #627 in San Francisco, Crain was detained and consented to a search of his suitcase. In the suitcase Agent Nedrow found the Bacchus after shave lotion (Exhibit 6B), the bottle of Florida water (Exhibit 4B) and the short-sleeved pumpkin-colored knit shirt with a design on the front with the matching trousers (Exhibit 5B). It was later ascertained that these Exhibits were purchased by one or the other defendant in the Seattle area with counterfeit bills.

■■  We cannot say that the trial court's finding that consent was given by Reeves for the search was clearly erroneous, nor that it was without probable cause. The search, under the circumstances of this case, was a reasonable one, and not violative of the Fourth Amendment. United States v. Davis, *supra*, 482 F.2d at 893; United States v. Tolliver, No. 73–1637 (9th Cir. July 2, 1973); United States v. Doran, 482 F.2d 929 (9th Cir. 1973); United States v. Hillery, No. 73–1586 (10th Cir. August 16, 1973).

■  Neither can we hold that the court's finding, that Reeves acquiesced in the search, was not a voluntary acquiescence, merely because he was responding to a request by a federal officer (Knight) or an airline employee (Saylor) who was cooperating with federal officers.

"(Such) fact alone is not enough to make her acquiescence involuntary. Frazier v. Cupp, 1969, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684; Government of the Virgin Islands v. Berne, 3d Cir. 1969, 412 F.2d 1055, cert. denied 396 U.S. 837, 90 S.Ct. 96, 24 L.Ed.2d 87, rehearing denied 396 U.S. 937, 90 S.Ct. 261, 24 L.Ed.2d 239. And there was nothing else to indicate coercion. The officers made no show of force and they made no threats. They did not exert pressure upon Mrs. Butler in any way. *Cf.* United States ex rel. Harris v. Hendricks, 3d Cir. 1970, 423 F.2d 1096." United States v. Fields, 458 F.2d 1194, 1198 (3rd Cir. 1972).

■  Appellant also claims he was entitled to an *in camera* showing of the Federal Aviation Agency's skyjacker profile. When *every* passenger is asked to proceed through the magnetometer test, the language in United States v. Doran, *supra*, Paragraph No. 4—"Profile", is controlling.

"Since the profile was not necessary to support the search, we find that the refusal to disclose it was not error. With or without having been selected as a profilee, appellant would still have been subject to search, and the reasonableness of that search is not in any

way dependent on the profile. United States v. Bell, 464 F.2d 667, 674–675 (CA2 1972) [Judge Friendly's concurring opinion]."

Other errors asserted by defendants do not, in our opinion, require discussion or comment.

Affirmed.