EL PUEBLO DE PUERTO RICO, recurrido, *v.* FERNANDO NARVÁEZ CRUZ y DAVID ORTIZ RODRÍGUEZ, acusados y peticionarios.

*Número:* CE-86-296 *Resuelto:* 24 de mayo de 1988

430

*Felipe Cirino Colón*, de la *Sociedad para Asistencia Legal*, abogado de los peticionarios; *Rafael Ortiz Carrión, Procurador*

*General*, y *Rose Mary Corchado Lorent, Procuradora General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El presente recurso de *certiorari* nos permite explorar, en relación con la garantía contra registros y allanamientos irrazonables contemplada tanto en el Art. II, Sec. 10 de nuestra Constitución, L.P.R.A., Tomo 1, como en la Enmienda IV de la Constitución de Estados Unidos de América, L.P.R.A., Tomo 1, la validez del consentimiento prestado por un invitado o visitante de una residencia a que se efectúe un registro o allanamiento en la misma. El recurso, adicionalmente, nos brinda la oportunidad de expresarnos sobre el punto de si la conducta observada por uno de los residentes de dicho hogar —uno de los aquí peticionarios— al no objetar expresamente la entrada y presencia de los agentes del orden público en dicha residencia constituyó un consentimiento implícito del registro efectuado. Por último, y de concluir que la actuación de cualquiera de dichas personas constituyó un consentimiento válido a la realización del registro, el recurso nos permite señalar los límites o la extensión del mismo.

I

Como a la 1:30 P.M. del 18 de diciembre de 1985 se recibió, por el Sgto. Luis F. Santiago, en la Sección Contra el Crimen Organizado de la Policía de Puerto Rico una llamada telefónica de una persona —voz de hombre— que se negó a identificarse, en la cual se informaba que en el Núm. 153 de la Calle 9 de la Barriada Israel, Hato Rey, Puerto Rico, se escondía el prófugo de la justicia Manuel De Jesús Castro, quien acostumbraba llegar a dicha casa de madrugada. La persona, adicionalmente, brindó una descripción de la resi-

dencia. Recibida la llamada, el sargento Santiago procedió a cotejar si en los récord de la agencia policíaca existía una requisitoria en relación con dicha persona, confirmando el hecho. Procedió, entonces, esa misma tarde a trasladarse a la Barriada Israel donde verificó la existencia de la residencia en la mencionada dirección.

A eso de las 7:00 A.M. del 19 de diciembre de 1985 el sargento Santiago, en compañía de los agentes Ríos y Rosado, se personó a la dirección antes indicada procediendo a "tocar" en la puerta de la residencia. Abrió la misma una dama —a quien los agentes no conocían, enterándose luego que responde al nombre de Sofía Gascot Hernández— a quien el sargento Santiago, luego de identificarse como miembro de la Policía de Puerto Rico, preguntó por el paradero del prófugo De Jesús Castro.

La señora Gascot Hernández, *alegadamente*, contestó que allí no había ningún prófugo *y que la Policía podía entrar a la casa a verificar dicho hecho*, invitación que aceptó el sargento Santiago y el agente Ríos, permaneciendo el agente Rosado fuera de la casa. Al entrar los dos referidos funcionarios públicos al interior de la residencia notaron la presencia en la sala de la misma de tres personas, los aquí peticionarios David Ortiz Rodríguez y Fernando Narváez Cruz y un menor de edad, quienes, *alegadamente, no objetaron la entrada, y presencia, en la casa de los agentes del orden público.*

Mientras el agente Ríos permanecía observando a las cuatro personas antes mencionadas en la sala de la casa, el sargento Santiago —con el propósito de verificar si el prófugo se encontraba o no— se dirigió al baño de la casa pudiendo observar en el mismo, detrás de la "bacineta", una escopeta de cañón recortado. Luego de ocupar dicha arma de fuego, pudo observar que en el piso había una "carterita", de la cual sobresalían numerosos cigarrillos que, según su expe-

riencia, eran "cigarrillos de marihuana".([1]) Habiéndose incautado de la carterita y su contenido, al mirar hacia la cocina de la casa el sargento Santiago observó en una mesa un "peine" de balas propio de una pistola, el cual igualmente ocupó. Al salir de la casa con los cuatro ocupantes de la misma, el agente Rosado le informó al sargento Santiago que "alguien" había tirado por una ventana de la casa una pistola cargada con balas.

Procede, por último, que se enfatice que la señora Gascot Hernández no residía en la referida casa, perteneciendo la misma al padre del peticionario David Ortiz Rodríguez, quien sí vivía en dicha residencia.

Radicados pliegos acusatorios contra los aquí peticionarios Ortiz Rodríguez y Narváez Cruz por infracción al Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401, y por infracción a los Arts. 5 y 6 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 415 y 416, éstos solicitaron la supresión de la evidencia ocupada por la Policía de Puerto Rico por el fundamento, en síntesis, de que la misma había sido obtenida en violación de las disposiciones del Art. II, Sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico, *supra*.

El Tribunal Superior de Puerto Rico, Sala de San Juan([2]) —luego de celebrar la correspondiente vista evidenciaria donde testificó, *como único testigo*, el Sgto. Luis F. Santiago— declaró sin lugar en corte abierta la referida moción de supresión de evidencia. Al así resolver, expresó el magistrado que presidió la vista:

> Mire, compañero, el problema aquí es que yo tengo evidencia, no me corresponde a m[í] darle credibilidad en este momento, de que la persona que abre la puerta co[ge] y hace una

---

([1]) La carterita contenía exactamente veintiséis (26) cigarrillos de marihuana.

([2]) Hon. Miguel A. Rivera Arroyo, Juez Superior.

invitación a los agentes a registrar la casa para fines de cerciorarse de que allí está el prófugo y es como consecuencia de ese acto de la persona que abre la puerta y que los agentes entran. Esa es la prueba, esa es la prueba que yo tengo aquí.

A los agentes en ese momento no se le puede pedir que ellos identifiquen, que ellos le exijan una identificación a la persona como que la persona es la dueña, ellos tienen que presumir que la persona que abre la puerta y que le hace una invitación para que entren y registren, pues, es una persona que está autorizada, es con posterioridad a ese momento que ellos se enteran que es una persona que está allí de visita y que el dueño es otra persona. Distinto sería la situación si los agentes cuando llegan a esa casa conocen cuál es el dueño y entran sin autorización de ese dueño. T.E., págs. 41–42.

Inconformes, los referidos peticionarios comparecieron —vía *certiorari*— ante este Tribunal imputándole error al tribunal de instancia "al declarar sin lugar la moción de supresión de evidencia radicada". Originalmente nos negamos a expedir el auto solicitado. Posteriormente, en reconsideración, expedimos el mismo. Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

## II

El Art. II, Sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico, en lo pertinente, dispone:

No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.

. . . . . . . .

Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse. Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 299.

Por su parte, la Enmienda Cuarta de la Constitución federal dispone:

> No se violará el derecho del pueblo a la seguridad de sus personas, hogares, documentos y pertenencias, contra registros y allanamientos irrazonables, y no se expedirá ningún mandamiento, sino a virtud de causa probable, apoyado por juramento o promesa, y que describa en detalle el lugar que ha de ser allanado, y las personas o cosas que han de ser detenidas o incautadas. Emda. IV, Const. E.U., L.P.R.A., Tomo 1, ed. 1982, pág. 186.

■ Es un principio firmemente establecido que todo registro, allanamiento o incautación realizada sin orden judicial previa es irrazonable per se, sujeto a contadas excepciones de alcance rigurosamente definido. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); *Katz v. United States*, 389 U.S. 347, 357 (1967); *Chambers v. Maroney*, 399 U.S. 42, 51 (1970); *Coolidge v. New Hampshire*, 403 U.S. 443, 454–455 (1971); *Pueblo v. Vázquez Méndez*, 117 D.P.R. 170 (1986); *Pueblo v. Falú Martínez*, 116 D.P.R. 828 (1986); *Pueblo v. Lebrón*, 108 D.P.R. 324 (1979). Esto es, una vez el acusado establece que el registro o incautación fue sin orden judicial, surge una presunción de invalidez, y corresponde al Ministerio Público demostrar que el registro realizado fue uno legal y razonable. *Pueblo v. Vázquez Méndez*, ante.

■ Igualmente establecido está que una de las excepciones a la anterior regla lo constituye el registro llevado a cabo a base de un consentimiento válido. *Davis v. United States*, 328 U.S. 582, 593–594 (1946); *Zap v. United States*, 328 U.S. 624, 630 (1946); *Schneckloth v. Bustamonte*, ante; *United States v. Matlock*, 415 U.S. 164 (1974). Para que dicho consentimiento sea válido, se requiere que éste sea voluntario, *Schneckloth v. Bustamonte*, ante, y que sea prestado por quien tenga autoridad para prestarlo. *United States v. Matlock*, ante.

■ Según establecido por el Tribunal Supremo de los Estados Unidos en *United States v. Matlock*, ante, una persona no tiene que poseer un interés legal en la propiedad para consentir válidamente a que la misma sea registrada. Lo que se requiere es que la persona que presta el consentimiento posea una "autoridad común u otra relación suficiente con respecto a la propiedad a ser registrada". (Traducción nuestra.) Íd., pág. 171.

■ El concepto de "autoridad común . . . con respecto a la propiedad" a su vez fue interpretado por dicho Tribunal en el citado caso como que "depende del uso mutuo de la propiedad por personas que generalmente *tienen un acceso o control conjunto* [con respecto a la propiedad] en cuanto a varios propósitos, de tal forma que es razonable reconocer que cualquiera de los cohabitantes tiene el derecho de permitir la inspección por derecho propio y que los otros han asumido el riesgo de que uno de ellos pueda permitir que el área común sea registrada". (Traducción nuestra y énfasis suplido.) *United States v. Matlock*, ante, pág. 171 esc. 7. De esta manera, se ha permitido que una tercera persona — quien no es la dueña de la propiedad a ser registrada— preste un consentimiento válido para que se lleve a cabo el registro de la misma, siempre que cumpla con el citado requisito de "autoridad común u otra relación suficiente con respecto a la propiedad a ser registrada". Esto a su vez implica que una tercera persona no puede prestar un consentimiento válido para que se registre propiedad que está bajo la posesión exclusiva de otra persona.

■ Bajo el criterio establecido en *United States v. Matlock*, ante, el dueño de una propiedad y un *mero* invitado o visitante suyo no comparten o poseen "autoridad común" sobre la misma. W.R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West

Pub. Co., 1987, Vol. 3, Sec. 8.5(e), pág. 309. W.E. Ringel, *Searches and Seizures, Arrests and Confessions*, 2da ed., Nueva York, Clark Boardman Co., 1985, Vol. 1, Sec. 9.5(c), págs. 9-37, 9-38. Acorde con lo anterior se ha resuelto que, de ordinario, un mero invitado o visitante ocasional no puede prestar su consentimiento para que se lleve a cabo un registro de una propiedad que pueda ser efectivo contra el dueño de la misma. *State v. Hatton*, 389 N.W.2d 229 (Minn. Ct. App. 1986); *State v. Manns*, 220 Neb. 426, 370 N.W.2d 157 (1985); *People v. Wagner*, 104 Mich. App. 169, 304 N.W.2d 517 (1981); *United States v. Harris*, 534 F.2d 95 (7mo Cir. 1976); *United States v. Galante*, 547 F.2d 733 (2do Cir. 1976).

■ Conforme con *United States v. Harris*, ante, y los demás casos sobre este particular, la determinación sobre si el consentimiento prestado por el visitante es o no uno válido requiere un cuidadoso examen de la relación particular entre dueño y visitante envuelta en el caso. Esto es, no hay una regla uniforme y categórica al respecto; es necesario examinar la relación particular envuelta. El referido examen puede llevar a la conclusión de que la persona que ha prestado su consentimiento es algo más que un mero visitante ocasional de la propiedad y que posee, por tanto, la "autoridad común" o la relación con la propiedad requerida bajo el criterio establecido en *United States v. Matlock*, ante.

Así, a manera de ejemplo, tenemos que en otras jurisdicciones se ha decretado inválido el consentimiento prestado por una persona que utiliza ocasionalmente un apartamento, y que luego de ausentarse el arrendatario del mismo, permanece en él, cuando la persona no residía en dicho apartamento, no poseía una llave del mismo y el arrendatario le había dado instrucciones de cerrar con llave el apartamento cuando se marchara, *United States v. Harris*, ante; cuando la persona que presta el consentimiento ha pernoctado una noche en el apartamento (*overnight guest*), *People v. Wag-*

*ner*, ante; cuando la persona que presta el consentimiento es un mero amigo del dueño de la residencia, *State v. Manns*, ante.

Por otra parte, y a manera de ilustración, se ha estimado suficiente por otros tribunales el consentimiento prestado, entre otros casos, por un visitante que es más que un visitante ocasional y que "estaba a cargo de la residencia", *United States v. Turbyfill*, 525 F.2d 57, 58–59 (8vo Cir. 1975); cuando la persona es hija de los dueños de la residencia y está a cargo de la misma durante la ausencia temporera de sus padres, *Garr v. Commonwealth*, 463 S.W.2d 109 (Ky. Ct. App. 1971); cuando el dueño de la propiedad deja a la persona a cargo de la misma durante su ausencia, aun cuando no hay una relación de familia entre ellos, *Morrison v. State*, 508 S.W.2d 827 (Tex. Crim. Ct. App. 1974); cuando la persona es amiga del dueño del apartamento, ha pernoctado ocasionalmente en el mismo, y conoce a una de las personas que pretenden entrar, por ser hermana del dueño, *Nix v. State*, 621 P.2d 1347 (Alaska 1981); cuando la persona es hermano del dueño de la residencia, un frecuente visitante de la misma, y siempre se le había permitido invitar amistades a dicha residencia, *People v. Shaffer*, 444 N.E.2d 1096 (Ill. Ct. App. 1982).

▪ Ahora bien, se ha resuelto que un registro es válido cuando un agente de la Policía, "'de buena fe, descan[sa] en la autoridad que, aunque equivocada, razonablemente aparen[ta] tener [una tercera] persona para consentir a un registro'". (Traducción nuestra.) *Snyder v. State*, 738 P.2d 1303 (Nev. 1987), citando a *United States v. Sledge*, 650 F.2d 1075, 1081 (9no Cir. 1981); *United States v. Hamilton*, 792 F.2d 837, 842 (9no Cir. 1986); *Nix v. State*, ante, pág. 1349; *People v. Gorg*, 45 Cal. 2d 776, 291 P.2d 469 (1955).

LaFave, *op. cit.*, Sec. 8.3(g), págs. 261–271.[3] Esto no significa que la Policía pueda proceder sin más en circunstancias ambiguas o que pueda razonablemente proceder basándose en las afirmaciones de autoridad de la persona que presta el consentimiento, si dichas afirmaciones aparentan ser irrazonables. *Nix v. State*, ante, pág. 1350; LaFave, *op. cit.*, Sec. 8.3(g), pág. 268 n. 116. Lo que es más, aun cuando la Policía lleva a cabo una investigación, su conclusión —a base de la información que recibe— a los efectos de que la persona efectivamente tenía la autoridad para consentir al registro, debe ser una "razonable". LaFave, *op. cit.*, págs. 266–269.

### III

Al aplicar el análisis consistentemente empleado en este tipo de casos por otros tribunales a la situación de hechos que hoy nos ocupa, nos percatamos de que el récord está huérfano de evidencia sobre ello. Todo lo que se desprende del mismo récord es que la señora Gascot Hernández, quien le abrió la puerta a los agentes de la Policía y los invitó a pasar y a buscar al prófugo, no vivía en la residencia aquí registrada, y que sólo se encontraba de visita en la misma.[4]

---

[3] Según W.R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West Pub. Co., 1987, Vol. 3, Sec. 8.3(g), aunque el Tribunal Supremo federal nunca se ha pronunciado en cuanto a esta doctrina, hay bases razonables para pensar que la adoptaría de llegarle la oportunidad. No obstante, éste añade que ". . . si el Tribunal [Supremo] adopta la doctrina de la autoridad aparente, esperamos que los Jueces hagan meridianamente claro que la creencia de la Policía debe ser razonable y que esto no significa que la Policía puede proceder sin investigación en circunstancias ambiguas o aceptar siempre, sin más, la asunción aparente de la persona que presta el consentimiento, a los efectos de que ésta posee autoridad para permitir el registro. Esto es, la doctrina de la autoridad aparente no debe ser aplicada en la manera flexible e indiscriminada en que ha sido generalmente utilizada por los tribunales de California". (Traducción nuestra y nota al calce omitida.) LaFave, *op. cit*, pág. 266.

[4] No estamos llevando a cabo un análisis exhaustivo sobre la validez del consentimiento prestado por una tercera persona en todo tipo de contexto o relación; como por ejemplo, cónyuges, padres, hijos menores, arrendadores y arren-

No hay evidencia alguna de que esta señora fuera un familiar del dueño de la casa y/o que estuviera a cargo de la misma durante la ausencia del dueño, de cuán frecuentemente visitaba dicha residencia, si tenía llaves de la misma, etc. En fin, es imposible determinar qué tipo de relación tenía ella con la residencia y sus dueños para poder determinar si poseía la "autoridad común" requerida por *United States v. Matlock*, ante. Ante esta situación, es inescapable concluir que el consentimiento que la señora Gascot prestó al registro de la residencia aquí envuelta, y que era propiedad del padre de uno de los peticionarios, no fue válido, por ser ella una mera visitante ocasional de dicha residencia y no poseer la "autoridad común" requerida sobre la misma.

Tampoco puede considerarse válido el consentimiento prestado por ella bajo la doctrina de la autoridad aparente antes mencionada. Como hemos expresado, en esta clase de situaciones la Policía viene en la obligación de indagar razonablemente respecto a la autoridad de la persona que presta el consentimiento al respecto. Como cuestión de hecho, se desprende de la jurisprudencia relativa a la doctrina de la autoridad aparente, que siempre ha habido una manifestación de la persona que presta el consentimiento a los efectos de que posee la autoridad para permitir el registro, o la Policía ha poseído algún tipo de información previa

---

datarios, etc. Claro está, al ser el criterio establecido en *United States v. Matlock*, 415 U.S. 164, 171 (1974) —el de "autoridad común u otra relación suficiente con respecto a la propiedad a ser registrada"— el elemento crucial para determinar la validez del consentimiento prestado por una tercera persona en general, el mismo debe ser aplicado a toda situación. Ahora bien, en cuanto a la determinación de si existe esa "autoridad común u otra relación suficiente" en esa relación en particular, debe acudirse a los principios establecidos por la jurisprudencia relativa a cada contexto específico. Para una discusión relativamente detallada sobre otros tipos de relaciones, véanse: LaFave, *op. cit.*, Secs. 8.4–8.6, págs. 274–331; W.E. Ringel, *Searches and Seizures, Arrests and Confessions*, 2da ed., Nueva York, Clark Boardman, Co., 1985, Secs. 9.5(a)–9.5(e), págs. 9-32 a 9-43.

con respecto a dicha autoridad.(5) Es esto precisamente lo que da base a la buena fe de los agentes de la Policía y les permite llegar a una creencia o conclusión razonable de que la persona que representa tener la autoridad para permitir un registro de verdad la tiene.

En este caso, el sargento Santiago declaró que al llegar a la residencia tocó a la puerta, la cual abrió una señora que luego se enteró respondía al nombre de Sofía Gascot; que tanto él como los otros agentes que lo acompañaban se identificaron; que él le preguntó a la señora Gascot que dónde estaba el prófugo; que ella contestó que allí no había ningún prófugo y le dijo que podía entrar a verificar.

Ni dicho agente ni ninguno de los otros inquirió de esta señora si ella era la dueña de la casa o sobre el tipo de relación que tenía con la misma o qué hacía ésta allí. Bien pudo haber sido, como aparentemente resultó ser, una mera visitante. También pudo haber poseído la "autoridad común" o la "relación suficiente con respecto a la propiedad" requerida bajo *United States v. Matlock*, ante, para prestar un consentimiento válido. Pero esto no llegó a conocimiento de los

---

(5) Véanse jurisprudencia ilustrativa en LaFave, *op. cit.*, Sec. 8.3(g), págs. 261–271. A manera de ejemplo, véanse: *United States v. Isom*, 588 F.2d 858 (2do Cir. 1978) (fue válido el consentimiento prestado por un arrendatario para el registro de una caja fuerte propiedad de alguien que se hospedaba en el lugar, *pero que no reclamó ser su propietario cuando la Policía le preguntó*); *State v. Lucero*, 692 P.2d 287 (1984) (consentimiento válido para el registro de un *locker*, ya que la persona que lo prestó *poseía las llaves y su nombre figuraba en el contrato de arrendamiento*); *Spears v. State*, 605 S.W.2d (Arkansas 1980) (consentimiento válido por ser prestado por una mujer *quien dijo estar a cargo de la casa de su hijo mientras éste estaba ausente*); *Jackson v. Unites States*, 404 A.2d 911 (D.C. Ct. App. 1979) (consentimiento prestado por el marido para registrar el carro de su esposa fue válido, ya que *éste describió el carro en presencia de su esposa como "nuestro carro"*); *State v. Christian*, 26 Wash. App. 542, 613 P.2d 1199 (1980), confirmado, 95 Wash. 2d 655, 628 P.2d 806 (1981) (consentimiento prestado por el arrendador para registro contra su arrendatario fue válido, ya que el *arrendador le manifestó a la Policía que el arrendatario se había marchado, aun cuando tanto el arrendador como la Policía desconocían que el arrendatario había regresado*).

agentes de la Policía. Ni ellos se lo preguntaron ni ella lo manifestó.

La Policía tampoco poseía información previa alguna con respecto a la relación de esta señora con la propiedad aquí envuelta y por consiguiente, con su posible autoridad para permitir un registro de la misma. No habían prestado vigilancia anteriormente a la casa para ver si esta señora estaba o no residiendo allí, o cuán frecuentemente iba a la misma, o si se había quedado "a cargo" de ésta, o si tenía llaves para entrar, etc. No tenían absolutamente nada en qué fundar su creencia de que dicha señora tenía la autoridad para permitir un registro de la casa.

 En aras de la protección de los derechos constitucionales envueltos en este tipo de situaciones, cuando se invoca la doctrina de la autoridad aparente, pretendiéndose que los agentes de la Policía descansen en las representaciones de autoridad de una determinada persona para consentir a un registro, deben observarse rigurosamente los requisitos de la misma. Resolvemos, en su consecuencia, que cuando los agentes de la Policía no posean información previa sobre la autoridad de una persona para consentir a un registro, producto dicha información de una razonable investigación, *éstos deberán indagar al respecto en el momento de solicitar el consentimiento, pidiéndole a la persona que se identifique e inquiriéndole sobre si es la dueña de la propiedad o la relación que tiene con la misma.*

## IV

Habiendo determinado que el consentimiento prestado por la señora Gascot fue insuficiente o inválido, analizamos la cuestión de si el peticionario Ortiz Rodríguez tenía la suficiente "autoridad común" sobre la residencia como para poder "consentir" al registro de la misma y, en segundo lugar, el punto de si la actitud pasiva y silente de dicho peticionario

al no objetar en ningún momento la entrada, y presencia, de los agentes del orden público a la referida residencia constituyó un consentimiento implícito o tácito al registro efectuado.

Respecto a la primera de estas interrogantes, procede que se señale que la *única prueba* presentada en la vista evidenciaria celebrada ante el tribunal de instancia —recordaremos que la parte peticionaria tuvo a bien no presentar prueba alguna— demuestra que Ortiz Rodríguez es una persona adulta, hijo del dueño de la residencia, y que residía en la misma. A nuestro entender, ello —cuando menos prima facie— es suficiente para determinar que esta persona tenía la "autoridad común" sobre dicha residencia, requerida por la jurisprudencia aplicable, para consentir o permitir el registro efectuado. *United States v. Matlock*, ante; *Garr v. Commonwealth*, ante.

Respecto a la segunda de las interrogantes, debe recordarse que la prueba presentada demuestra que Ortiz Rodríguez se encontraba junto al otro peticionario —Narváez Cruz— y un menor de edad, en la sala de la casa, lugar donde entran los agentes inmediatamente que logran acceso a la misma.(6) No surge de dicha prueba que Ortiz Rodríguez —ni ninguno de los otros— hubiese objetado en forma alguna la entrada y presencia de los agentes en la casa.

■ Sabido es que el "titular" de la protección constitucional contra registros y allanamientos irrazonables puede renunciar, expresa o tácitamente, a su derecho ante un registro sin orden previa. Esta renuncia se puede deducir "del acto del acusado de permitir la entrada del agente, o cuando se puede establecer que hubo una invitación implícita de su

---

(6) Surge de la transcripción de la vista sobre supresión de evidencia, a la pág. 10, que a la entrada de la casa estaba la sala.

parte". *Pueblo v. Seda*, 82 D.P.R. 719, 729 (1961). La doctrina, sin embargo, requiere que esa renuncia sea voluntaria. *Pueblo v. Seda*, ante, págs. 728–729; *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770, 776–777 (1982). Entre "los factores determinantes sobre si medió o no una renuncia expresa o tácita [están]: (1) si ha habido fuerza o violencia; (2) si el registro se realizó después de un arresto, y (3) si se encontraban otras personas presentes". *Pueblo v. Acevedo Escobar*, ante, pág. 777; *Pueblo v. Seda*, ante, pág. 729.

En el presente caso no existe prueba de que mediara coacción alguna de parte de los agentes del orden público. Tampoco se alega que los agentes utilizaran fuerza o violencia. Es correcto que los funcionarios no solicitaron permiso expreso de Ortiz Rodríguez para entrar y registrar la casa. Ello no obstante, se puede hacer la inferencia lógica y razonable de que éste consintió al registro; resulta difícil pensar que esta persona no se percatara de que el propósito de dichos agentes al entrar a la residencia era uno de índole investigativa.

Por otro lado, se puede, inclusive, razonablemente inferir que Ortiz Rodríguez tenía *pleno conocimiento* de la conversación sostenida entre la señora Gascot y los agentes del orden público. La conversación entre estas personas ocurrió en el área de la puerta de la casa, la cual está, según la prueba, *inmediatamente* al lado de donde se encontraba Ortiz Rodríguez. Resulta razonable la inferencia de que él escuchó dicha conversación. Tampoco objetó en ese momento el consentimiento prestado por la señora Gascot.

Debido a todo lo anteriormente expresado, somos del criterio —y así lo resolvemos— que en el presente caso el peticionario Ortiz Rodríguez, persona con autoridad para ello, consintió, implícita o tácitamente, al registro efectuado.

## V

■ Establecida la existencia de un consentimiento válido para el registro aquí efectuado por una persona con autoridad para ello, *el alcance de dicho registro será tan amplio como los términos del consentimiento prestado*. Un registro por consentimiento será razonable siempre que se mantenga dentro de los límites del consentimiento prestado y se ajuste a los propósitos del mismo. Debe además limitarse a las áreas donde razonablemente pueda encontrarse escondido el artículo o persona objeto del registro. *State v. Valencia Olaya*, 736 P.2d 495, 499 (N.M. App. 1987); *United States v. Dichiarinte*, 445 F.2d 126 (7mo Cir. 1971). LaFave, *op. cit.*, Sec. 8.1(c), págs. 160–174; Ringel, *op. cit.*, Sec. 9.4, págs. 9-29 a 9-30.

Bajo las circunstancias de este caso, el consentimiento implícito prestado por el peticionario Ortiz Rodríguez, al no objetar la entrada y presencia de la Policía en su residencia, fue uno amplio: *en busca de un prófugo, quien, naturalmente, podía estar escondido en cualquier parte de la casa.*

■ Demás está decir que si en el curso de un registro la Policía, actuando dentro de los límites del mismo, descubre evidencia delictiva a plena vista, puede incautarse válidamente de la misma. *United States v. Dichiarinte*, ante, pág. 130; *Warden v. Hayden*, 387 U.S. 294 (1967); *Pueblo v. Lebrón*, ante; *Pueblo v. Dolce*, 105 D.P.R. 422 (1976); LaFave, *op. cit.*, Sec. 8.1(c), págs. 166–168.

A base de la prueba presentada, fue correcta la decisión emitida por el foro de instancia; esto es, la evidencia obtenida en el registro aquí efectuado, objetada por los peticionarios, fue legalmente ocupada por haber estado a plena vista. No procedía la supresión de la misma.

Por último, carece de validez el argumento de los peticionarios a los efectos de que el registro fue ilegal debido a que

la confidencia que lo originó fue insuficiente e inválida; esto por no haberse establecido ninguno de los requisitos jurisprudenciales para su validez como fuente determinante de causa probable para el allanamiento, registro y arrestos efectuados. Véase *Pueblo v. Díaz Díaz*, 106 D.P.R. 348 (1977).

En el presente caso no es necesario entrar a determinar la suficiencia de la referida confidencia. El registro y posterior arresto de los peticionarios fue consecuencia de la evidencia delictiva a plena vista descubierta por la Policía, una vez obtenido un consentimiento válido para entrar en la residencia en busca del prófugo. Es ahí que surgen los motivos fundados para la ocupación de dicha evidencia y no con la confidencia.

Por los fundamentos anteriormente expuestos, *se expide el auto y se dictará sentencia confirmatoria de la resolución recurrida. Se devuelve el caso a instancia para ulteriores procedimientos compatibles con lo aquí resuelto.*

El Juez Asociado Señor Hernández Denton emitió opinión concurrente y disidente.

—O—

Opinión concurrente y disidente emitida por el Juez Asociado Señor Hernández Denton.

Estoy de acuerdo con la conclusión de la mayoría de que el Estado no cumplió con su deber de probar la autoridad y suficiencia del consentimiento al registro brindado por la señora Gascot Hernández, quien permitió que la Policía entrara al interior de la residencia del padre del peticionario. Sin embargo, no puedo suscribir la tesis mayoritaria de que el consentimiento implícito del recurrente Ortiz Rodríguez fue suficiente para impartir validez al registro. Por lo tanto, aunque concurro con los pronunciamientos vertidos en las

partes I, II y III de la opinión, me veo en la obligación de fraternalmente disentir de las últimas dos partes y del resultado final.

## I

Al resolver la controversia ante nos sobre la admisibilidad de la evidencia obtenida mediante un registro sin orden de allanamiento, partimos de la premisa de que el mismo se presume irrazonable y corresponde al Ministerio Público demostrar lo contrario. *Pueblo v. Malavé González*, 120 D.P.R. 470 (1988); *Pueblo v. Vázquez Méndez*, 117 D.P.R. 170 (1986); *Pueblo v. Falú Martínez*, 116 D.P.R. 828 (1986). Aunque esta norma no es absoluta, sus excepciones son limitadas y específicas. *Pueblo v. Malavé González*, supra; *Pueblo v. Rivera Rivera*, 117 D.P.R. 283 (1986). Una de estas excepciones es cuando existe un consentimiento válido.

Como correctamente concluyó la opinión mayoritaria, para que el consentimiento sea válido se requiere que sea voluntario. Si es dado por un tercero se requiere, además, que el que lo concede tenga "autoridad común u otra relación suficiente con respecto a la propiedad" allanada. Al así disponer, reiteramos la aplicación de las normas formuladas por el Tribunal Supremo de Estados Unidos en *United States v. Matlock*, 415 U.S. 164, 171 (1974). El Estado deberá probar el uso mutuo de la propiedad por personas que tienen acceso o control conjunto de ésta en cuanto a la mayoría de los propósitos. *United States v. Matlock*, supra, pág. 171. Véase *Pueblo ex rel., F.J.M.R.*, 111 D.P.R. 501 (1981).

Es con este criterio que la mayoría de este Tribunal decide hoy que el Estado no pudo probar la validez del registro a base del consentimiento de la señora Gascot Hernández, quien abrió la puerta de la casa y permitió la entrada a la Policía. Se concluye que "el récord está huérfano de evidencia" (opinión del Tribunal, pág. 440) sobre su relación con la residencia o sus dueños para probar su "autoridad común".

Sin embargo, a base de un récord igualmente huérfano de prueba se concluye que el Estado sí cumplió su obligación de probar la validez del consentimiento del peticionario:

Es correcto que los funcionarios no solicitaron permiso expreso de Ortiz Rodríguez para entrar y registrar la casa. Ello no obstante, se puede hacer la *inferencia lógica* y *razonable* de que éste consintió al registro . . . . Tampoco objetó en ese momento el consentimiento prestado por la señora Gascot. (Énfasis suplido.) Opinión del Tribunal, pág. 445.

No estoy de acuerdo. Todo consentimiento a un registro sin orden constituye una renuncia a un derecho constitucional. Por ello, debe ser voluntario y de nuevo le corresponde al Estado probar esta voluntariedad. ¿Puede "inferirse" una renuncia válida a un derecho constitucional a base de los hechos del caso de autos? Ciertamente, la voluntariedad del consentimiento debe determinarse a base de la totalidad de las circunstancias, pero no debe inferirse ligeramente o mediante un proceso de lógica que no esté fundado en los hechos probados. Si bien el consentimiento se puede deducir "del acto del acusado de permitir la entrada del agente, o . . . [de] una invitación implícita de su parte", *Pueblo v. Seda*, 82 D.P.R. 719, 728–729 (1961), la "prueba sobre la renuncia ha de ser clara, demostrativa de que no existió coacción verdadera de clase alguna, directa o indirecta". *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770, 777 (1982).

En el caso ante nos, contrario a la conclusión de la opinión mayoritaria, la prueba no revela que el peticionario permitió la entrada de los agentes ni accedió al registro del interior de la residencia. Mientras se desarrolló el allanamiento, el peticionario estaba sentado en la sala bajo la custodia de un agente debidamente armado. Otro policía custodiaba la entrada de la residencia y el tercer miembro del "operativo" la registró. Aunque no hubo violencia por parte de la Policía, ¿es válida la conclusión de que no hubo coacción? Por otro lado, ¿puede inferirse que el silencio del

peticionario bajo custodia equivale a una renuncia tácita a su derecho constitucional?

No podemos ignorar que tradicionalmente la doctrina y jurisprudencia se han referido a consentimientos tácitos cuando existe una disposición estatutaria que autoriza registros sin orden o cuando la persona consiente indirectamente al actuar de cierta forma específica. Véase W.R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West Pub. Co., 1987, Vol. 3, Sec. 8.2(*l*), pág. 219. Por ejemplo, en *Pueblo v. Rodríguez*, 107 D.P.R. 804 (1978), afirmamos que todo comerciante que se dedica a vender licor consiente implícitamente a que los funcionarios del Departamento de Hacienda penetren a su negocio a determinar si se ha cumplido con la ley.

Igualmente, en la jurisprudencia federal se habla de consentimiento implícito cuando una persona se dedica a una actividad altamente reglamentada. Se presume que sus actuaciones se llevan a cabo con pleno conocimiento de que su negocio puede ser inspeccionado en cualquier momento. *United States v. Biswell*, 406 U.S. 311 (1972). En otros casos se señala que el consentimiento es implícito por la conducta de la persona. Así, los pasajeros de los aviones consienten al registro de su equipaje al decidir abordar el avión y el visitante de una cárcel consiente al registro al decidir entrar a ésta. *United States v. Doran*, 482 F.2d 929 (9no Cir. 1973); *United States v. Sihler*, 562 F.2d 349 (5to Cir. 1977). En todos estos casos de consentimiento implícito existe alguna forma de advertencia sobre la posibilidad del registro. La persona tiene conocimiento de esto y decide voluntariamente llevar a cabo la actividad.[1]

---

[1] La doctrina ha sido criticada y dudamos que sea deseable adoptarla sin una discusión adecuada para circunstancias como la del caso de autos. Véase W.R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West Pub. Co., 1987, Vol. 3, Sec. 8.2(*l*), pág. 220.

Otra forma de consentimiento implícito se puede dar cuando la persona registrada obedece sin protestar al pedido de un funcionario. Esto sucede, por ejemplo, cuando un conductor accede a abrir el baúl de su auto luego de que la Policía le pregunta si lo permite. La persona no accede expresamente, pero su acto de abrir el baúl o de entregar las llaves es suficiente para demostrar el consentimiento. Véase, por ejemplo, *Pueblo v. Acevedo Escobar*, supra, págs. 772–773.

Sin embargo, en ninguno de nuestros casos hemos llegado al punto de haber reconocido un consentimiento a base del silencio de una persona en una situación como la de autos. El deber del Ministerio Público de probar que el consentimiento fue dado libre y voluntariamente no se cumple demostrando simplemente la aceptación de un reclamo de autoridad por parte de la Policía, especialmente cuando esta aceptación se da en circunstancias aparentemente coercitivas. Aquí los policías se encontraban dentro de la casa y el recurrente estaba bajo custodia de uno de ellos. No hay prueba de que supiera qué hacían allí o qué buscaban. Tampoco hay prueba sobre la reacción del recurrente al ver a los policías entrar a su casa o de que su silencio estuviera acompañado de una invitación implícita a que se continuara con el registro. En cambio, se probó que los policías no sabían de quién era la casa o quién era el recurrente, que no se le pidió su consentimiento, que fue puesto bajo custodia una vez entraron a su casa y que se empezó a registrar inmediatamente sin hacerle pregunta alguna. A base de esta evidencia no podemos "inferir" que el recurrente consintió al registro. No creo que el Estado haya cumplido con su deber de probar la voluntariedad del consentimiento. Por lo tanto, procede la revocación de la resolución del foro de instancia.

## II

Por último, debemos comentar los pronunciamientos que hace la opinión mayoritaria por vía de *dictum* sobre la lla-

mada doctrina de autoridad aparente. Creemos que son innecesarios. A base de esta doctrina, para que un registro sea válido, basta con que la Policía esté convencida de que la persona que dio el consentimiento tenía la autoridad para permitir el registro. No hace falta probar que la persona de hecho tuviera esa autoridad. Aunque este Tribunal no se ha manifestado anteriormente sobre la doctrina, la ponencia mayoritaria discute su aplicación a los hechos del caso de autos sin antes cuestionarse sobre las consecuencias que puede acarrear su adopción.

La doctrina tiene su origen en la decisión del Tribunal Supremo de California en *People v. Gorg*, 291 P.2d 469 (Cal. 1955), y desde entonces ha sido aplicada en algunos estados y circuitos. Véanse, por ejemplo: *Nix v. State*, 621 P.2d 1347 (Alaska 1981); *U.S. v. Miller*, 800 F.2d 129 (7mo Cir. 1986); *United States v. Hamilton*, 792 F.2d 837 (9no Cir. 1986). Sin embargo, el trasfondo constitucional y doctrinal sobre el cual se fundan estas decisiones es distinto al nuestro. Contrario a lo que suponen los pronunciamientos de la mayoría del Tribunal, nuestra Constitución concede una amplia protección y no estamos obligados a adoptar las doctrinas más limitativas de los derechos de los ciudadanos.

La doctrina de la autoridad aparente ha sido fuertemente criticada por comentaristas y tribunales. Véase, por ejemplo, L.L. Weinreb, *Generalities of the Fourth Amendment*, 42 U. Chi. L. Rev. 47, 64 (1974) y la discusión citada en LaFave, *op. cit.*, págs. 264–266. Ciertamente antes de aceptarla debiéramos contar con una discusión sobre los fundamentos ofrecidos para adoptarla en otras jurisdicciones y de las bases constitucionales sobre las que se sostiene. Por ejemplo, al adoptarse recientemente por dos tribunales de circuito federal, se razonó que la doctrina no iba en contra del propósito de la regla de exclusión. Sin embargo, debemos recordar que en la esfera federal ésta sólo adelanta el propósito de prevenir futuras actuaciones irrazonables de la Policía. *United*

*States v. Calandra*, 414 U.S. 338 (1974); *United States v. Hamilton*, supra; *U.S. v. Miller*, supra. Según este razonamiento, no se adelanta ese propósito cuando un policía actúa razonablemente, y la validez del registro se pierde por falta de autoridad real. *Nix v. State*, supra, págs. 1348–1349. La razonabilidad de la actuación de la Policía dependerá de que la información se crea correcta al momento de llevar a cabo el registro y no de que esta información resulte ser correcta o falsa. *U.S. v. Miller*, supra, pág. 133.

Por su parte, aunque el Tribunal Supremo de Estados Unidos aceptó la excepción de "la buena fe" para validar un registro fundado en una orden expedida indebidamente, dicho Foro no ha adoptado la doctrina de autoridad aparente. En *United States v. Leon*, 468 U.S. 897 (1984), se sostuvo la validez de un registro llevado a cabo con una orden ilegalmente expedida por un magistrado, porque la Policía de buena fe confiaba en la validez de la decisión judicial. Sin embargo, en la doctrina de autoridad aparente se trata de un registro *sin orden* que depende del consentimiento de una persona sin autoridad alguna para otorgarlo.

Cuando el Tribunal Supremo de Estados Unidos modificó la regla de exclusión federal al adoptar una "excepción de buena fe" partió de dos premisas básicas: (1) que la regla de exclusión es tan sólo un remedio creado judicialmente y (2) que su única función es evitar la mala conducta de la Policía. Esta decisión ha sido criticada en repetidas ocasiones y rechazada por tribunales estatales y tratadistas. *Com. v. Upton*, 476 N.E.2d 548 (Mass. 1985); *People v. Sundling*, 395 N.W.2d 308 (Mich. Ct. App. 1986); *People v. Bigelow*, 488 N.E.2d 451 (N.Y. 1985); *State v. Novembrino*, 519 A.2d 820 (N.J. 1987); *New Jersey Supreme Court Rejects a Good Faith Exception to the Exclusionary Rule*, 19 Rutgers L.J. 197 (1987); C. Francis, *The "Good Faith Exception": Obituary for the Fourth Amendment Exclusionary Rule?*, 53 UMKC L. Rev. 677, 679 (1985); Nota, *The Emerging Good*

*Faith Exception to the Exclusionary Rule*, 57 Notre Dame Law. 112 (1981).

En estas circunstancias, no estoy de acuerdo con la aprobación de la doctrina de autoridad aparente por parte de la mayoría de este Tribunal. En Puerto Rico la regla de exclusión de evidencia es de carácter constitucional. Constituye un instrumento fundamental para la protección efectiva del derecho a la intimidad y para evitar registros irrazonables. Es altamente cuestionable que a pesar de que aquí no hemos permitido la "excepción de buena fe" de *United States v. Leon*, supra, la mayoría aprovecha este caso para incorporar la doctrina de autoridad aparente y así ratificar la validez de un registro que el Tribunal concluyó fue tácitamente autorizado. En este contexto estos pronunciamientos son innecesarios e incompatibles con nuestro ordenamiento constitucional.