El Juez Asociado Señor Rivera Pérez
emitió la opinión del Tribunal.
Por medio de este recurso de certiorari se nos solicita que revisemos una sentencia emitida por el Tribunal de Apelaciones, la cual revoca una Resolución dictada por el Departamento de Recursos Naturales y Ambientales *458 (DRNA). El foro apelativo intermedio resolvió que la intervención efectuada por el Cuerpo de Vigilantes del DRNA no cumplió con los requisitos estatutarios y jurisprudenciales sobre los registros y allanamientos, por lo que declaró irrazonable la intervención, por ser de naturaleza inconstitucional.
I
El 5 de septiembre de 2005, el Sr. William Blassini Cabassa, el Sr. Roberto Matías Borrelli y el Sr. Noel Matías Santiago (recurridos) se encontraban cazando tórtolas en una finca privada propiedad del Sr. Raynier Ramírez, sita en el sector Rayo Plata del barrio Encarnación del municipio de Lajas. Por ser temporada de caza y en una zona donde se permite tal actividad, el Cuerpo de Vigilantes del DRNA (Vigilantes) se encontraba en el área vigilando por el cumplimiento de las leyes y los reglamentos que regulan el deporte de la cacería en Puerto Rico. Los Vigilantes alegaron escuchar detonaciones de armas de fuego y entendieron que tenían motivos fundados para penetrar en la finca privada propiedad del Sr. Raynier Ramírez, desde donde supuestamente provenían los disparos. Para lograr acceso a la finca, el señor Fabre les permitió la entrada a su finca, colindante con la propiedad inmueble desde donde se oyeron los disparos, y cortó una verja de alambres que marcaba la colindancia entre su finca y la del Sr Raynier Ramírez, donde se encontraban los cazadores practicando su deporte.
En la finca del Sr. Raynier Ramírez, los Vigilantes utilizaron cuatro vehículos de motor y se dividieron en dos grupos. Cuando los Vigilantes se encuentran con los recurridos, ya en su campamento y no cazando, procedieron a intervenir con éstos, expidiéndoles multas por violaciones a la Nueva Ley de Vida Silvestre de Puerto Rico y al Reglamento para Regir la Conservación y el Manejo de la *459 Vida Silvestre, las Especies Exóticas y la Caza en el Estado Libre Asociado de Puerto Rico.(1)
A los recurridos se les multó por cazar aves en exceso a lo permitido por ley y cazar en un área cebada. Además, al señor Blassini Cabassa se le multó por prestar un arma de fuego inscrita para la cacería a una persona que no tenía una licencia para cazar expedida por el Estado. Por ello, se les multó por la cantidad de $1,800 y $500, respectivamente. La intervención, según reconoce el DRNA, se realizó en una propiedad privada y sin una orden judicial previa.
Insatisfechos con el procedimiento seguido por los Vigilantes, antes y durante la intervención, los recurridos solicitaron una revisión de las multas administrativas. En suma, alegaron que la evidencia obtenida por los Vigilantes es inadmisible por ser producto de un registro irrazonable e inconstitucional.
Luego de varios trámites procesales administrativos, el 16 de junio de 2006 el Oficial Examinador emitió un informe, determinando que el registro efectuado por los Vigilantes era razonable y legal. Recomendó que se mantuvieran las multas en cuanto a cazar en exceso a lo permitido por ley y en área cebada, mas no así la multa impuesta al señor Blassini Cabassa por haber prestado el arma de fuego a una persona sin una autorización para cazar en Puerto Rico.
El 22 de junio de 2006, el DRNA dictó una Resolución en la que acogió las recomendaciones contenidas en el informe del Oficial Examinador y confirmó las multas sugeridas.(2) En esta Resolución el DRNA concluyó que el registro realizado por los Vigilantes no fue ilegal puesto que está contemplado en el Art. 5(b)(1) de la Ley de Vigilantes de Recursos *460 Naturales y Ambientales del Departamento de Recursos Naturales y Ambientales,(3) la Sec. 6.1 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (LPAU),(4) y en la jurisprudencia establecida en el caso Pueblo v. Ferreira Morales, 147 D.P.R. 238 (1998). Ante esta situación, los recurridos presentaron una solicitud de reconsideración, la cual fue declarada "no ha lugar”.
Inconformes, los recurridos acudieron al Tribunal de Apelaciones solicitando la revocación de la Resolución emitida por el DRNA. El foro apelativo intermedio acogió los planteamientos de los aquí recurridos y revocó. Ello por entender que la intervención fue producto de un registro ilegal e inconstitucional. El Tribunal de Apelaciones dictaminó que la caza deportiva no es una actividad estrechamente regulada por el Estado, por lo que los Vigilantes necesitaban una orden judicial para penetrar en la finca privada donde se encontraban los cazadores recurridos. Además, concluyó que el DRNA no podía realizar un registro sin una orden judicial al amparo de su facultad de otorgar licencias según dispone la LPAU, ya que dicha excepción sólo se extiende a las actividades comerciales. El Tribunal de Apelaciones ordenó la supresión de la evidencia obtenida mediante el registro, la cual sirvió de base para la imposición de las multas administrativas.
Inconforme con la determinación del Tribunal de Apelaciones, el DRNA acude a nosotros solicitando la revisión de dicha Sentencia. Señaló como error incurrido por el Tribunal de Apelaciones el siguiente:
Erró el Tribunal de Apelaciones al determinar que el registro efectuado por el Cuerpo de Vigilantes del D.R.N.A. en la finca privada donde los recurridos cazaban fue inconstitucional por haberse practicado sin motivos fundados, sin orden judicial y en ausencia de excepción alguna que permitiera tal intervención. Petición de certiorari, pág. 6.
*461 II
 La LPAU establece una norma de revisión judicial que le imparte deferencia a las resoluciones emitidas por las agencias administrativas. Tal deferencia se observa por el conocimiento especializado que las agencias administrativas poseen en las áreas que regulan, siempre y cuando sus decisiones finales estén basadas en evidencia sustancial que obre en la totalidad del expediente administrativo.(5)
Por otro lado, la LPAU establece que los tribunales revisarán las conclusiones de derecho en todos sus aspectos.(6) Esta norma obedece a que los tribunales, como conocedores del Derecho, no tienen que mostrar deferencia a las interpretaciones jurídicas que realizan las agencias administrativas sobre el Derecho en general.(7) No obstante, hemos establecido que se le debe impartir deferencia a la interpretación especializada de las agencias administrativas sobre las leyes y los reglamentos que administran. Por ello, no se puede descartar de forma liberal tales interpretaciones.(8)
Ahora bien, en este caso no existe tal situación, porque no está involucrada una situación de alta complejidad técnica que requiera el conocimiento especializado de la agencia para resolverlo. En otras palabras, la deferencia que los tribunales deben darle a las resoluciones administrativas por su grado de especialidad en la materia, no está aquí presente. Sólo hay que interpretar, en esta ocasión, el De *462 recho en general y para ello ningún foro está más capacitado que un tribunal.
III
Antes de proceder a resolver la controversia de marras, analizaremos cómo el derecho de intimidad en Puerto Rico, en lo pertinente, protege a las personas contra registros y allanamientos sin una orden judicial previa. El Art. II, Sec. 10 de la Constitución de Puerto Rico(9) dispone, en parte, lo siguiente:
No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.
Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.
Conforme a dicha disposición constitucional, todo registro, allanamiento o incautación realizada sin una orden judicial previa se presume irrazonable.(10) Esta norma está sujeta a “contadas excepciones de alcance rigurosamente definido”.(11)
La Constitución de Puerto Rico se extiende a todo tipo de registro, sean civiles, administrativos o penales. Esto es, que cualquier registro, no importa su naturaleza, se presumirá controvertiblemente irrazonable si se lleva a cabo sin una orden judicial previa.(12)
*463 Cuando hablamos de inspecciones administrativas, nos referimos al registro a través de la presencia física de un funcionario administrativo en la propiedad privada de una persona natural o jurídica que se dedique a una actividad o negocio regulado por el Estado. En estos casos, la expectativa razonable de intimidad de la persona podría ser intervenida. Está presente un choque entre el derecho a la intimidad y el interés de la agencia de obtener la información necesaria para poder fiscalizar el cumplimiento de las leyes y sus reglamentos administrativos. En una situación de esa naturaleza, la inspección que el Estado realice está limitada por la protección constitucional contra registros y allanamientos irrazonables, disposición contenida en el Art. II, Sec. 10, de la Constitución de Puerto Rico, supra.
Es preciso mencionar que nuestra Constitución reconoce y concede unos derechos más abarcadores que los derechos contenidos en la Constitución de Estados Unidos de América, particularmente en lo relativo al derecho a la intimidad, entre otros derechos.(13) Al demarcar los contornos de las garantías y los derechos garantizados por la Constitución de Puerto Rico sobre este asunto, al igual que los estados de la Unión, podemos ser más amplios y abarcadores que el Tribunal Supremo de Estados Unidos en su interpretación de la cláusula análoga de la Constitución federal.(14) Esto, pues la Cuarta Enmienda de la Constitución de Estados Unidos de América, según interpretada por el Tribunal Supremo federal, constituye la protección mínima que los estados están obligados a reconocer.(15)
La Sec. 10 del Art. II de la Constitución de Puerto Rico, supra, está íntimamente relacionada con las Secs. 1 y 8 del mismo artículo.(16) La Sec. 1 consagra la inviolabili *464 dad de la dignidad e igualdad del ser humano, mientras que la Sec. 8 protege a las personas de ataques abusivos a su honra, a su reputación y a su vida privada o familiar. Estos principios son consustanciales con el derecho a la intimidad.(17)
Los tres objetivos históricos que persigue la referida garantía constitucional contra registros irrazonables son: proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias, e interponer la figura de un juez entre los funcionarios públicos de las Ramas Ejecutiva y Legislativa, y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intervención con el derecho a la intimidad del ciudadano.(18)
Sin embargo, el hecho de que el Estado intervenga con un ciudadano no activa per se la referida protección constitucional. Más bien, para que dicha protección se active, es necesario determinar si el individuo tiene un interés personal sobre el lugar u objeto registrado, de modo que posea una expectativa razonable de intimidad.(19)
Para determinar si una persona posee una expectativa razonable de intimidad en el tiempo y lugar en que se efectuó el registro, se consideran los factores siguientes: (1) lugar registrado; (2) naturaleza y grado de la intrusión; (3) objetivo o propósito de la intervención; (4) si la conducta de la persona indicaba alguna expectativa subjetiva de intimidad; (5) existencia de barreras físicas que restrinjan la entrada o visibilidad al lugar; (6) cantidad de personas que tienen acceso legítimo al lugar; (7) inhibiciones sociales relacionadas con el lugar registrado,(20) y (8) momento en que se realiza el registro.
A pesar de la norma general que establece que cualquier registro realizado sin una orden judicial consti *465 tuye, prima facie, un registro ilegal,(21) existen excepciones al requerimiento de una orden judicial previa en los registros y allanamientos. La LPAU incorporó algunas de las excepciones sobre registros y allanamientos al disponer lo siguiente:
Las agencias podrán realizar inspecciones para asegurarse del cumplimiento de las leyes y reglamentos que administran y de las resoluciones, órdenes y autorizaciones que expidan, sin previa orden de registro y allanamiento, en los siguientes casos:
(a) En casos de emergencias, o que afecte la seguridad o salud pública;
(b) al amparo de la facultades de licénciamiento, concesión de franquicias, permisos u otras similares;
(c) en casos en que la información es obtenible a simple vista o en sitios públicos por mera observación. (Enfasis suplido.)(22)
La Legislatura reconoció en la LPAU que en Puerto Rico todo registro sin una orden judicial se presume irrazonable. De otra forma se podría colocar en peligro de invalidez el estatuto por entrar en conflicto con los derechos protegidos por la Constitución de Puerto Rico.(23) La razonabilidad del registro o allanamiento efectuado sin una orden judicial previa depende de la totalidad de las circunstancias.
Sobre la facultad administrativa de licénciamiento de ciertas agencias administrativas, es indispensable aclarar que la mera otorgación de una licencia no convierte, ipso facto, al negocio o actividad en un negocio o actividad íntimamente reglamentado o relacionado con la salud o la seguridad pública. Lo determinante debe ser la naturaleza del comercio o de la actividad, no el que se le requiera un permiso o licencia para operar o ejercer.(24)
En Pueblo v. Ferreira, supra, establecimos que la razonabilidad de un registro en una industria ínti *466 mámente reglamentada depende de que se cumplan con los requisitos siguientes: la existencia de un interés sustancial que fundamente el esquema regulador de la agencia que realiza el registro administrativo; si el esquema regulador del comercio o actividad realizada adelanta el interés del Estado, y si el esquema regulador contiene suficientes garantías en cuanto a la certeza y regularidad de los registros, de forma tal que constituya un sustituto adecuado al requisito constitucional de una orden judicial previa. Ex-presamos lo siguiente:
Estimamos que las garantías en cuanto a certeza y regularidad de un estatuto que autoriza a una agencia administrativa a realizar registros administrativos en negocios estrechamente reglamentados quedan satisfechos bajo la Sec. 10 del Atr. II de nuestra Carta de Derechos ... si se satisfacen, al menos, los siguientes elementos: (1) el estatuto advierte al propietario ... que su negocio está sujeto a inspecciones no discrecionales por parte de funcionarios públicos al amparo de una ley; (2) el estatuto establece el alcance de la inspección y notifica a su propietario quiénes están autorizados para realizarlo; y (3) el tiempo, lugar y alcance de la inspección está limitado adecuadamente. (Enfasis suplido.)(25)
Un sustituto adecuado en esos casos puede ser indicar a las personas naturales o jurídicas objetos de un registro administrativo sobre la certeza y regularidad de las inspecciones administrativas y delimitar el ámbito discrecional del funcionario que realiza tal investigación o registro.
Este Tribunal ha reconocido, como excepción a la regla general, el registro consentido válidamente.(26) Para que el consentimiento prestado sea válido, se requiere que sea voluntario y prestado por quien tenga autoridad para concederlo. En este sentido, hemos resuelto que si el consentimiento es dado por un tercero, se requiere que la persona tenga una “ ‘autoridad común u otra relación *467 suficiente con respecto a la propiedad a ser registrada’ ”.(27) Por ello, un tercero no puede prestar un consentimiento válido para registrar una propiedad que esté bajo la posesión exclusiva de otro.(28) Esta norma fue reiterada en Pueblo v. Rivera Colón, 128 D.P.R. 672 (1991), donde resolvimos que un tercero no estaba autorizado para consentir la entrada de los agentes del orden público a la propiedad de otra persona.
Cuando los agentes del orden público —así como los Vigilantes— no tengan información previa sobre la autoridad de una persona para consentir a un registro, deberán indagar al respecto al momento de solicitar el consentimiento, pedirle a la persona que se identifique y preguntarle si es la dueña del lugar o la relación que tiene con éste.(29) A base de la totalidad de las circunstancias, se determinará si la persona que prestó el consentimiento tenía la capacidad para autorizar el registro.(30)
IV
La Constitución de Puerto Rico dispone que será política pública de nuestro gobierno “la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad”.(31) Según este mandato constitucional se aprobó la Nueva Ley de Vida Silvestre de Puerto Rico, así como el Reglamento para Regir la Conservación y el Manejo de la Vida Silvestre, las Especies Exóticas y la Caza en el Estado Libre Asociado de Puerto Rico (Reglamento). *468 (32) Algunas de las facultades investigativas de los Vigilantes sobre los cazadores son las siguientes:
[inspección del producto diario de su caza y su licencia de caza deportiva a funcionarios (empleados) del Departamento debidamente autorizados e identificados, funcionarios del or-den público o un cazador autorizado. Cualquier especie de fauna silvestre cazada en violación a este Reglamento, así como las armas, balas, cartuchos, municiones, arcos, flechas, cualquier embarcación, vehículo o cualquier aparato que haya sido utilizado en violación a este Reglamento podrán ser retenidas e incautadas por miembros del Departamento debidamente autorizados, miembros del Cuerpo de Vigilantes y/o de la Policía de Puerto Rico.(33)
Esta disposición faculta a los Vigilantes a intervenir con los cazadores, quienes están compelidos a cumplir con las leyes y los reglamentos que regulan el deporte de la caza en Puerto Rico. Para fortalecer y facilitar la autoridad de los Vigilantes sobre los cazadores, así como para prevenir que los cazadores induzcan a error a los Vigilantes sobre la cantidad de aves cazadas, el Reglamento dispone que “[n]inguna persona podrá desplumar completamente un ave en el área de caza. Por lo menos, la cabeza y una de las alas, deben permanecer con todas sus plumas adheridas al ave, cuando sea transportada del área de caza a su residencia”.(34)
De lo expuesto no surge duda alguna de que los Vigilantes tienen autoridad en ley para intervenir con los *469 cazadores. Este Tribunal no pretende limitar en lo absoluto tal facultad investigativa del DRNA. Lo que sí entendemos pertinente es que se reconozca que los Vigilantes tienen unas limitaciones constitucionales, estatutarias y reglamentarias que no pueden obviar o ignorar. El Reglamento prohíbe taxativamente cazar en fincas privadas sin el consentimiento del dueño y dispone que “[e\l cazador deberá proveer información sobre el nombre, número de teléfono y lugar donde se puede contactar al dueño, administrador o encargado que le autorizó, de manera que esta autorización pueda ser corroborada posteriormente”. (Enfasis suplido.) Reglamento, supra, Art. 5.10(A)(4), pág. 53. Dicha disposición reglamentaria pretende confirmar la autorización del dueño de la finca para la práctica de la caza en su propiedad.
Otra limitación impuesta por el mismo Reglamento se encuentra en la regulación de la caza en áreas cebadas. El Reglamento dispone que el DRNA colocará rótulos en las áreas que han sido cebadas. En tal situación, el Reglamento establece que los Vigilantes tratarán de conseguir al dueño de la finca para solicitarle su autorización para colocar los rótulos. Si el dueño se niega, será responsable de prohibir la caza en su propiedad. Además de lo reseñado, la Ley de Vigilantes de Recursos Naturales y Ambientales del Departamento de Recursos Naturales y Ambientales establece que “[l\a entrada a propiedades privadas requiere el permiso previo del dueño del terreno, excepto en los casos que establece la see. 2191 del Título 3, parte de la Ley de Procedimiento Administrativo Uniforme”. (Enfasis suplido.)(35) Todas las disposiciones reglamentarias y estatutarias expuestas consideran situaciones específicas dentro de las propiedades privadas y fueron incluidas para salvar la constitucionalidad del Reglamento.
*470 V
Establecidos los parámetros de la autoridad de los Vigilantes para velar por el fiel cumplimiento de las regulaciones del deporte de la cacería en una propiedad privada, examinaremos si en el caso de autos aplica alguna de las excepciones reconocidas en la LPAU. Recordemos que el alegado motivo fundado para creer que se estaba cometiendo un delito o una posible violación reglamentaria en la finca privada propiedad del Sr. Raynier Ramírez fue haber escuchado unas detonaciones de armas de fuego en plena temporada de cacería provenientes de esa propiedad ubicada en una zona autorizada para practicar tal deporte.
Los Vigilantes no pueden intervenir con los cazadores en cualquier tiempo o lugar. Para ello, deben cumplir con el requisito de tener derecho a estar en el lugar donde intervienen con los cazadores. Por eso resulta ineludible evaluar si los Vigilantes tenían el derecho de estar en el lugar donde realizaron la intervención, entiéndase, dentro de la finca propiedad del Sr. Raynier Ramírez.

La finca del Sr. Raynier Ramírez se encontraba cercada, lo que impedía el acceso de las personas y de los vehículos. La verja es una señal o indicio claro de que existía una expectativa razonable de intimidad.

Del expediente ante nos no se infiere que el colindante, señor Fabre, contara con la autoridad del dueño de la finca intervenida, requisito de nuestro ordenamiento jurídico para permitir el acceso de los Vigilantes a esa propiedad. De igual forma, tampoco refleja que los Vigilantes cumplieron con el requisito de indagar sobre la autoridad del señor Fabre para permitirles penetrar en una finca que no es de su propiedad. Por lo expuesto, concluimos que el consentimiento prestado por el señor Fabre no cumple con los requisitos establecidos para su validez.(36)
*471 El señor Fabre recurrió a la fuerza al cortar la verja colindante, permitiendo así que los Vigilantes penetraran en la finca del Sr Raynier Ramírez. Esta Curia ha expresado en varias ocasiones que no se justifica una investigación administrativa en la cual se hace uso de la fuerza.(37) En H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra, pág. 978 esc. 24, reseñamos que “el uso de la fuerza para realizar un registro solo procede cuando se ha obtenido una orden de allanamiento, aú n cuando el legislador haya autorizado los registros sin orden y se trate de una industria extensamente reglamentada ...”. (Enfasis suplido.)
En cuanto a la concesión de licencias y la jurisprudencia establecida en el caso Pueblo v. Ferreira Morales, supra, hemos expresado que la mera concesión por el Estado de una licencia no convierte per se al negocio o a la industria para la cual se concede en un negocio o una industria estrechamente reglamentada. En el presente caso, no nos encontramos con una actividad de industria o comercio, sino —como lo define la Nueva Ley de Vida Silvestre de Puerto Rico y el Reglamento— ante una actividad recreativa.(38)
¿Constituyó motivo fundado para los Vigilantes creer que se estaba cometiendo un delito o una violación al reglamento de esa agencia al escuchar detonaciones de armas de fuego en una finca privada rural, en un área donde se permite practicar el deporte de la cacería y en plena temporada de caza? Contestamos esta interrogante en la negativa. Veamos.
Era temporada de caza y un área donde se permite la cacería; los Vigilantes penetraron en una finca privada sin *472 una orden judicial previa; los Vigilantes no habían recibido ningún tipo de confidencia de que se estuviera incurriendo en alguna actividad ilegal en la propiedad; los Vigilantes no contaban con el consentimiento del dueño de la finca intervenida; los Vigilantes logran el acceso a la finca a través de una finca colindante, luego de que el señor Fabre —dueño de esa finca— cortara la verja sin la autorización del dueño de la finca intervenida, y no se podía observar a los cazadores desde la carretera donde los Vigilantes supuestamente escucharon las detonaciones. Concluimos que los Vigilantes no cumplieron con la norma pautada en Pueblo v. Rivera Colón, supra, por lo que carecían de motivos fundados para penetrar en una propiedad privada y obviar e ignorar la protección constitucional de los cazadores intervenidos. Es normal y completamente regular escuchar detonaciones en un área de caza y en plena temporada para realizar la referida actividad recreativa. Esto no constituye motivo fundado para creer que se estuviera cometiendo un delito o violando alguna disposición estatutaria o reglamentaria de naturaleza administrativa en la finca rural propiedad del Sr. Raynier Ramírez, en donde se escucharon tales detonaciones. Era completamente válida tal actividad recreativa por estar autorizada por ley y los reglamentos del DRNA.
Hay que tener presente que en Pueblo v. Ferreira Morales, supra, la controversia versaba sobre la intervención en comercios o industrias estrechamente reglamentadas en las cuales se necesita una licencia para operar. Tal situación es diametralmente opuesta al caso ante nos, por encontrarnos frente a una actividad recreativa donde el cazador se somete a la jurisdicción del DRNA en cuanto a las leyes y los reglamentos que regulan el deporte de la caza. En otras palabras, es una sumisión personal a la jurisdicción del DRNA en lo referente a las regulaciones del deporte de la caza, la cual no comprende la sumisión de sus derechos y garantías constitucionales.
Los recurridos alegan que se vieron privados de un derecho constitucional fundamental, como lo es la protección *473 de las personas contra registros y allanamientos efectuados sin una orden judicial previa. Reconocemos que el Estado debe de regular el deporte de la cacería, pero hay diversas alternativas menos onerosas para cumplir cabalmente con las leyes y los reglamentos que los Vigilantes administran, sin necesidad de violar los derechos constitucionales de los cazadores.
El DRNA, para justificar su intervención con los recurridos, alegó lo siguiente: (1) que la licencia de cazador es un privilegio y no un derecho, y que por lo tanto se puede intervenir libremente con los cazadores sin ningún tipo de limitación; (2) que sólo se puede cazar en propiedades privadas, y (3) que en el caso de autos, obtener una orden judicial previo al registro resultaba demasiado oneroso para los Vigilantes. Tales argumentos no nos convencen. Las licencias para conducir son también un privilegio y no por ello se ha desprovisto a los conductores de su derecho constitucional a la intimidad.
En Puerto Rico se permite la caza de aves acuáticas en la temporada determinada por el Secretario del DRNA en los cuerpos de agua que son de dominio público. También se permite la cacería de cabros y cerdos salvajes en Isla de Mona, que es un bien patrimonial del Estado pero que en la actualidad se le da un uso público. Se permite, además, la caza de caimanes y cocodrilos que soja un peligro y una amenaza para los seres humanos y las especies nativas. Existen propiedades privadas las cuales podrían constituir un campo abierto, ya sean pertenecientes al Estado o a personas jurídicas o naturales. La cacería bajo estas circunstancias podría producir un escenario de ausencia de expectativa razonable de intimidad de los participantes de esa actividad deportiva.
Aceptar como válida la postura del DRNA respecto a la onerosidad de obtener una orden judicial, previo a la realización de un registro, en las circunstancias aquí presentes, sería avalar una actuación “ultra vires” de los Vigilantes, debido a que el DRNA no puede obviar o incumplir sus *474 propios reglamentos.(39) Máxime, cuando los requisitos para obtener una orden judicial para realizar un registro en el área administrativo son mucho más laxos que en el área del derecho penal. (40)
VI
El estatuto y el Reglamento que regulan el deporte de la caza no autorizan la entrada a una propiedad privada sin el consentimiento previo del dueño, sin una orden judicial previa o sin que se cumpla con los requisitos establecidos en la Art. 6.1 de la LPAU, supra. Los Vigilantes pudieron utilizar otros medios como, por ejemplo, tratar de localizar al Sr. Raynier Ramírez, dueño de la finca intervenida. Esto puede resultar sencillo; bastaría con preguntarle a los vecinos, como el señor Fabre. Los Vigilantes pudieron esperar a que los cazadores terminaran de practicar el deporte e intervenir con ellos en un área permitida por el ordenamiento jurídico para eso. Disponían de los recursos necesarios; muestra de ello son los cuatro vehículos de motor y la cantidad de Vigilantes que participaron en la intervención, lo que les hubiera permitido colocarse en la entrada o las entradas de la finca del Sr. Raynier Ramírez e intervenir con los cazadores una vez éstos salieran de la propiedad privada.
Nos reafirmamos en que no pretendemos limitar las facultades y los poderes investigativos de los Vigilantes del DRNA para lograr hacer cumplir las leyes y los reglamentos que administran. Lo que este Tribunal no va a permitir es que para lograr tal fin, se infrinjan derechos tan fundamentales como el derecho constitucional a la intimidad. El DRNA puede utilizar medios razonables para poder lograr el cumplimiento de las leyes y los reglamentos bajo su jurisdicción.
*475 Los procedimientos administrativos son muy variados y, en algunos casos, complejos, por lo que no se pueden agrupar en un número reducido de moldes. Cierto es que las clasificaciones sencillas ejercen una atracción muy poderosa, porque facilitan la determinación y aplicación del Derecho. Sin embargo, el logro de tal propósito no puede hacerse a costa o riesgo de infringir los derechos constitucionales de los individuos.(41)
VII
Por los fundamentos expuestos, se confirma la Sentencia emitida por el Tribunal de Apelaciones, la cual revocó la Resolución dictada por el DRNA, y se devuelve el caso a la agencia para la continuación de los procedimientos de acuerdo con lo aquí pautado.
Juez Presidente Señor Hernández Denton emitió una opinión de conformidad. La Jueza Asociada Señora Fiol Matta emitió una opinión disidente, a la cual se unió la Juez Asociada Señora Rodríguez Rodríguez.
Opinión de conformidad emitida por el
Juez Presidente Señor Hernández Denton.
Estamos conformes con el resultado al que llega el Tribunal hoy, al decretar la invalidez de un registro sin una orden previa, efectuado por el Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales en una finca privada, por ser contrario a la protección constitucional contra los registros irrazonables. Los hechos particulares del caso de autos nos llevan a reafirmar la primacía del derecho de intimidad en nuestra jurisdicción, históricamente tutelado por este Tribunal. Reconocemos, sin em *476 bargo, la importante política pública de salvaguardar los recursos naturales, la cual no debe entenderse afectada por la decisión que tomamos hoy.
I
El caso de autos requiere que evaluemos la validez de un registro sin una orden efectuado por el Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales (Cuerpo de Vigilantes) a unos ciudadanos que practicaban el deporte de la caza en una propiedad privada, a la cual los Vigilantes obtuvieron acceso mediante el consentimiento prestado por un tercero. Para ello, debemos resolver si la caza constituye un negocio estrechamente reglamentado que active la disposición de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, que permite a las agencias —a modo de excepción— realizar registros sin una orden al amparo de sus facultades de licénciamiento.
En atención a lo anterior, el recurso de epígrafe exige que examinemos la validez del registro en controversia en un contexto muy particular, que nos coloca en la delicada tarea de balancear dos intereses de rango constitucional: el derecho de la ciudadanía a no ser sometida a registros irrazonables y el deber gubernamental de conservar los recursos naturales.
La Constitución del Estado Libre Asociado de Puerto Rico consagró como política pública “la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad”. Art. VI, Sec. 19, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 440. Esta disposición respondió a la clara intención de la Convención Constituyente de establecer la conservación del medio ambiente como una de las funciones primordiales de nuestro Gobierno. Misión Ind. P.R. v. J.C.A., 145 D.P.R. 908, 919 (1998). En atención a lo anterior, este Tribunal ha expresado que el referido precepto no es una declaración abstracta o exhortativa, *477 sino un mandato constitucional que prevalece sobre cualquier ley, reglamento u ordenanza que le sea contraria. íd.; Paoli Méndez v. Rodríguez, 138 D.P.R. 449, 460 (1995).
A tono con dicho mandato constitucional, la Nueva Ley de Vida Silvestre de Puerto Rico (Ley de Vida Silvestre), Ley Núm. 241 de 15 de agosto de 1999 (12 L.P.R.A. see. 107 et seq.), y la Ley de Vigilantes de Recursos Naturales y Ambientales del Departamento de Recursos Naturales y Ambientales (Ley de Vigilantes), Ley Núm. 1 de 29 de junio de 1977 (12 L.P.R.A. see. 1201 et seq.), establecen como política pública, respectivamente, la protección de la vida silvestre y su hábitat natural, así como la preservación y conservación de los recursos naturales de Puerto Rico. 12 L.P.R.A. sees. 107a y 1202.
Además de lo concerniente a las especies exóticas y a la modificación de hábitats, la Ley de Vida Silvestre regula todo lo referente a la actividad de la caza en nuestro país. Específicamente, se regula la expedición, renovación y revocación de licencias de caza, la operación de cotos de caza y el uso y la inscripción de armas de caza. 12 L.P.R.A. sees. 107c, 107d, 107i-107q y 107t. A esos efectos, la ley faculta al Secretario del Departamento de Recursos Naturales y Ambientales (D.R.N.A.) para promulgar reglamentos relativos a las áreas donde estará permitido cazar en Puerto Rico, las temporadas de caza, la fauna silvestre que puede ser cazada, el número de animales de cada especie que pueden ser cazados por día y los procedimientos y costos de obtención de licencias y permisos, entre otros asuntos. 12 L.P.R.A. sec. 107g. Al amparo de esta delegación, se aprobó el Reglamento para Regir la Conservación y el Manejo de la Vida Silvestre, las Especies Exóticas y la Caza en el Estado Libre Asociado de Puerto Rico, Reglamento Núm. 6765 de 11 de febrero de 2004 (Reglamento Núm. 6765).
La referida ley prohíbe expresamente cazar especies de vida silvestre sin obtener una licencia previa del Secretario del D.R.N.A. 17 L.P.R.A. sees. 107c y 107j. Para obtener dicha licencia, se requiere el cumplimiento de varios requisitos detallados en el estatuto. 17 L.P.R.A. sec. 107k. Cabe *478 señalar que, como parte de dichos requisitos, se exige que el solicitante mantenga un expediente negativo de antecedentes penales, así como haber aprobado un curso de educación para cazadores. En el referido curso se incluye un examen sobre la Ley de Vida Silvestre, sus reglamentos, las destrezas de uso y manejo de las armas de caza y el conocimiento de la vida silvestre. 17 L.P.R.A. sec. 107k(3).
En la ley se enumeran los actos que, conforme a ésta, se consideran ilegales. 17 L.P.R.A. sec. 107d. Es de notar que aunque la mayoría de las violaciones a la referida ley se consideran faltas administrativas, el estatuto establece que toda persona que viole sus disposiciones o sus reglamentos incurrirá en un delito menos grave, sujeto a las excepciones allí provistas. 12 L.P.R.A. sec. 107t(l). Véase, además, Reglamento Núm. 6765, Art. 9.02. Asimismo, cazar en terrenos de dominio público o privado sin el consentimiento corroborable del dueño o encargado constituye, según la ley, un delito grave. 12 L.P.R.A. sec. 107t(l).
Por su parte, la Ley de Vigilantes establece como uno de los deberes de los vigilantes velar por el cumplimiento de las leyes y los reglamentos relacionados con la conservación y el desarrollo de los recursos naturales. 12 L.P.R.A. sec. 1205(a)(8).(1) Véanse, además: 12 L.P.R.A. secs. 107s y 1202. Conforme a dicho deber, la ley confiere al Cuerpo de Vigilantes amplias facultades, entre las cuales se encuentra inspeccionar y requerir la presentación de cualquier permiso o licencia otorgado por el Secretario del D.R.N.A. que acredite la autorización de cualquier actividad u operación bajo la jurisdicción y competencia del Departamento “en terrenos públicos o privados dentro de los límites del Estado Libre Asociado de Puerto Rico”. (Enfasis suplido.) 12 L.P.R.A. sec. 1205(b)(2)(A). Esta facultad es cónsona con *479 una de las obligaciones del cazador establecidas en la Ley de Vida Silvestre:
Poseer y llevar consigo en todo momento que se transporte armas de caza o se dedique a la caza su licencia de caza o cualesquiera de las licencias o permisos autorizados, así como también certificado de registro del arma de caza y mostrar los mismos si así se le requiere a otro cazador, a un funcionario del orden público o a un funcionario del [D.R.N.A.] debidamente identificado. 12 L.P.R.A. sec. 107q(b).
La facultad de inspección de los Vigilantes también encuentra apoyo en el Reglamento Núm. 6765, el cual establece que el D.R.N.A. podrá realizar “inspecciones rutinarias para asegurar el cumplimiento de las leyes, reglamentos y condiciones del permiso o licencia ...”. Reglamento Núm. 6765, Art. 8.08(A).
La Ley de Vigilantes también faculta a estos funcionarios del orden público a portar armas; ordenar verbalmente el cese inmediato de cualquier actividad bajo la jurisdicción del Secretario llevada a cabo sin la autorización de éste o de forma irregular; emitir citaciones, expedir boletos, presentar denuncias y realizar “todo tipo de intervención por violaciones a las leyes administradas por el [D.R.N.A.]” (énfasis suplido), 12 L.RR.A. sec. 1205(b)(2)(A); ejecutar subpoenas relacionados con dichas violaciones; ejecutar órdenes de arresto emitidas por los tribunales, y realizar arrestos cuando se cometan delitos en su presencia. Asimismo, la referida ley preceptúa que el Cuerpo de Vigilantes puede ejecutar órdenes de registro y allanamiento emitidas por los tribunales. 12 L.P.R.A. see. 1205(b)(2)(D).
Ciertamente, de las mencionadas disposiciones legales surge la facultad del Cuerpo de Vigilantes para intervenir con los cazadores. No obstante, dicha facultad está limitada por la propia Ley de Vigilantes y, claro está, por las protecciones y garantías que nuestra Constitución reconoce a los ciudadanos. Específicamente, la Ley de Vigilantes dispone que éstos podrán “[r]ealizar registros relacionados con violaciones a las leyes cuya implementación ha *480 sido encomendada al Departamento de Recursos Naturales y Ambientales, conforme a las Reglas de Procedimiento Criminal de Puerto Rico ...”. (Enfasis suplido.) 12 L.RR.A. sec. 1205(b)(2)(G). Es decir, la referida ley sujeta la facultad del Cuerpo de Vigilantes de realizar registros a que exista una orden emitida por un tribunal y que el registro se efectúe de acuerdo con las Reglas de Procedimiento Criminal. Conforme a ello, el Art. 5 de dicha ley establece que “[l]a entrada a propiedades privadas requiere el permiso previo del dueño del terreno ...”. (Enfasis suplido.) 12 L.P.R.A. sec. 1205(b)(1).
Ahora bien, dicho artículo contiene una excepción, al disponer que los Vigilantes no necesitarán el permiso previo del dueño de la propiedad para entrar a ésta en los casos que establece la Sec. 6.1 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. see. 2191). Como es sabido, esta sección de la L.P.A.U. autoriza a las agencias a realizar inspecciones sin una orden previa de registro o allanamiento en tres instancias, a saber: en casos de emergencia; al amparo de las facultades de conceder licencias o permisos, o en casos en que la información se puede obtener a simple vista. 3 L.P.R.A. sec. 2191; Pueblo v. Ferreira Morales, 147 D.P.R. 238, 255 (1998); H.M.C.A. (P.R.), Inc., etc. v. Contralor, 133 D.P.R. 945, 976 (1993).
II
Precisamente, en el caso de autos el D.R.N.A. aduce que el registro sin una orden efectuado a los recurridos en una propiedad privada se llevó a cabo al amparo de su facultad de realizar inspecciones, de su autoridad para conceder licencias para autorizar la práctica de la caza en nuestra jurisdicción y de la doctrina establecida en Pueblo v. Ferreira Morales, supra, sobre negocios o industrias estrechamente reglamentadas. Sin embargo, al igual que lo determinó el foro apelativo intermedio y según lo resuelve este *481 Tribunal hoy, consideramos que dicha doctrina no aplica al caso de autos.
De entrada, debemos señalar que en Pueblo v. Ferreira Morales, supra, reconocimos que aunque la Sec. 6.1 de la L.P.A.U. no impone limitaciones a la actuación de las agencias, no hay duda que la autorización conferida por dicha sección debe ser interpretada de forma consecuente con los parámetros mínimos de la Cuarta Enmienda de la Constitución federal y, más aún, con nuestros pronunciamientos al amparo de la Sec. 10 del Art. II de nuestra Constitución, L.P.R.A., Tomo 1, la cual consagra la protección contra registros y allanamientos irrazonables. Pueblo v. Ferreira Morales, supra, pág. 255.
Por otro lado, la doctrina sobre negocios estrechamente reglamentados, establecida en Ferreira Morales, fundamentada, en parte, en la Sec. 6.1 de la L.P.A.U., supra, se refiere exclusivamente a actividades comerciales, a industrias o a negocios. Ello se deduce del texto de la opinión emitida en aquella ocasión, así como de sus fundamentos. Al acoger en nuestra jurisdicción la doctrina de “negocio estrechamente reglamentado” expusimos, entre otras cosas, que “bajo el Art. II, Sec. 10 de nuestra Constitución ... los registros administrativos de negocios estrechamente regulados configuran una de las excepciones a la norma general esbozada en E.L.A. v. Coca Cola Bott. Co., [115 D.P.R. 197 (1984),] en cuanto al requisito de orden judicial”. Pueblo v. Ferreira Morales, supra, pág. 254. Esta expresión respondió a que en E.L.A. v. Coca Cola Bott. Co., supra, resolvimos que la garantía constitucional contra los registros irrazonables se extiende a los establecimientos comerciales y que dicha protección prevalecerá a menos que se consienta al registro, o que circunstancias de emergencia requieran lo contrario y el balance de intereses en conflicto exija una solución distinta. E.L.A. v. Coca Cola Bott. Co., supra, pág. 208.
Como parte de los fundamentos expuestos en Ferreira Morales para adoptar la doctrina del “negocio estrechamente reglamentado”, razonamos que las intervenciones *482 administrativas en dichas industrias son consideradas me-nos nocivas a la intimidad que las intervenciones realizadas en negocios que no están bajo el constante examen de las autoridades. Se trata de circunstancias en las cuales la expectativa de intimidad se atenúa, pues como expresamos en Ferreira Morales,
... cuando una persona escoge involucrarse en un negocio cuya operación tiene tangencia con algún aspecto de la salud o seguridad pública y decide gestionar una licencia que autorice su participación en él, lo hace consciente de que los libros y expedientes del negocio, así como los propios bienes objeto de la actividad comercial estarán sujetos a una inspección gubernamental muy intensa. El interés gubernamental en velar por el estricto cumplimiento de la reglamentación en el contexto de este tipo de actividad comercial cobra mayor significado frente al reclamo de intimidad personal. En tales circunstancias, resultaría oneroso y, por consiguiente, irrazonable obligar al Estado a que obtenga una orden judicial basada en causa probable para que pueda efectuar de forma válida un registro administrativo. De este modo, los intereses estatales postulados minimizan la expectativa de intimidad que la sociedad puede razonablemente reconocerle al propietario del negocio y, en consecuencia, bajo los parámetros de nuestra Carta de Derechos, resulta razonable la intervención y el registro administrativo sin la previa obtención de una orden judicial. (Énfasis suplido.) Pueblo v. Ferreira Morales, supra, págs. 254-255.
No cabe duda, por lo tanto, de que el ratio decidendi de Ferreira Morales se basó en la existencia de una actividad comercial como punto de partida para la aplicación de la excepción de “negocio estrechamente reglamentado”. Además de acoger lo resuelto por el Tribunal Supremo de Estados Unidos en New York v. Burger, 482 U.S. 691 (1987), que al igual que en Ferreira Morales trataba sobre un negocio de depósito de chatarra, tomamos en consideración otras industrias o actividades comerciales en las cuales distintos tribunales de la jurisdicción estadounidense habían validado los registros administrativos sin una orden, a saber: industria de minas de carbón, armas de fuego, bebidas alcohólicas, industria de farmacias, areneros y graveras, casas de empeño, industria de acarreo de bienes, *483 negocio de disecado de animales, hogares de cuidado diurno, industria de seguros, entre otras. Pueblo v. Ferreira Morales, supra, pág. 252. Aun en el ámbito de las industrias o actividades comerciales, hicimos la salvedad de que no toda actividad comercial que requiera la obtención de una licencia expedida por el Estado para que una persona pueda llevarla a cabo, constituye una industria estrechamente reglamentada. Pueblo v. Ferreira Morales, supra, pág. 256. El requerimiento de una licencia, por sí solo, no es un factor determinante, pues la determinación de si una industria está estrechamente reglamentada deberá hacerse mediante un examen caso a caso. Id.
Contrario a las actividades o industrias antes citadas, practicar la caza en una finca privada no constituye per se un negocio o una industria estrechamente reglamentada. Distinto sería el caso si la finca en controversia fuese un coto de caza y no sólo una finca privada.(2) Aunque la Ley de Vida Silvestre establece un esquema detallado para la concesión de una licencia de caza y que la violación de las disposiciones estatutarias y reglamentarias acarrea la imposición de sanciones civiles y penales, creemos que esto no implica que dicha actividad se coloque dentro de la excepción de “negocio estrechamente reglamentado”. La Ley de Vida Silvestre define la caza deportiva como una “[a]ctividad recreativa autorizada por el Secretario en la cual el participante, llamado cazador deportivo, utiliza un arma para hacer presa a un animal de caza durante las *484 temporadas establecidas por el Secretario”. 12 L.P.R.A. sec. 107(d). Esta actividad recreativa, por definición, está relacionada con la industria de las armas de fuego, la cual sí está estrechamente reglamentada. No obstante, ello no es suficiente para catalogar la caza como una industria de ese tipo. La aplicación de la doctrina de “negocio estrechamente reglamentado” activa una excepción a la norma general de requerir una orden judicial para garantizar la protección constitucional contra registros irrazonables. Por eso, esta doctrina no debe aplicarse livianamente.
Lo anterior, sin embargo, de ninguna manera implica que hoy este Tribunal avale con su proceder la caza indiscriminada de nuestra fauna silvestre. Coincidimos con el criterio del Tribunal cuando expresa que practicar la caza conlleva una sumisión personal, en la cual el cazador se sujeta al cumplimiento de las disposiciones de la Ley de Vida Silvestre y a los reglamentos aplicables. Adviértase que, conforme a la política pública constitucional en pro de la conservación de nuestros recursos naturales, la caza está sujeta al cumplimiento de un esquema legal detallado respecto a: (1) los requisitos para obtener una licencia de cazador, lo que incluye, según hemos señalado, la aprobación de un curso de educación para cazadores que comprende un examen; (2) la fauna silvestre que puede ser cazada; (3) la temporada de caza; (4) el número de animales de cada especie que pueden ser cazados por día; (5) los lugares donde puede practicarse el deporte, y (6) las armas autorizadas para cazar, así como su inscripción, portación e inspección. De hecho, la Ley de Vida Silvestre preceptúa como una de las obligaciones del cazador que “[n]ingún cazador podrá matar o herir ningún animal de caza sin luego hacer un esfuerzo razonable para recobrarlo y tomar posesión del mismo para consumo, para taxidermia con fines educativos o de exhibición, en el caso de animales que pue *485 dan ser considerados como trofeos”. 12 L.P.R.A. see. 107q(i).(3)
III
Luego de resolver que no aplica la excepción de “negocio estrechamente reglamentado”, que permitiera a los Vigilantes realizar un registro sin una orden judicial previa, nos resta evaluar si dicho registro se efectuó conforme a las Reglas de Procedimiento Criminal de Puerto Rico, según lo requiere la Ley de Vigilantes, 12 L.P.R.A. see. 1205(b)(2)(G), y a la garantía constitucional contra registros y allanamientos irrazonables. Coincidimos con la determinación del Tribunal a los efectos de que el registro en controversia es contrario a la referida protección constitucional.
A. El Art. II, Sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico, supra, consagra el derecho de la ciudadanía a la protección de sus personas, casas, papeles, y efectos contra registros, incautaciones y allanamientos irrazonables. Esta sección, en unión a los principios constitucionales de la inviolabilidad de la dignidad del ser humano y la protección de toda persona contra ataques abusivos a su honra, persigue proteger la intimidad de los *486 ciudadanos frente a las actuaciones arbitrarias del Estado. Art. II, Secs. 1 y 8, Const. E.L.A., supra; Pueblo v. Rivera Colón, 128 D.P.R. 672, 681 (1991). En términos prácticos, el objetivo de la referida Sec. 10 del Art. II de nuestra Constitución es impedir que el Estado interfiera con la intimidad de las personas, salvo en aquellas instancias en las que el ordenamiento lo permite. Pueblo v. Yip Berríos, 142 D.P.R. 386, 397 (1997).
Como es sabido, la disposición constitucional contra registros irrazonables es análoga a la Cuarta Enmienda de la Constitución de Estados Unidos. Sin embargo, como esta última cláusula sólo establece un ámbito mínimo de protección, los estados y Puerto Rico pueden reconocer mayo-res garantías a sus ciudadanos que las que confiere la Constitución federal. Lo anterior, junto con las dos salvaguardas adicionales que nuestra Constitución preceptúa sobre la inviolabilidad de la dignidad del ser humano y la prohibición contra ataques abusivos a la honra, la reputación y la vida privada de toda persona, nos han llevado a afirmar que nuestra Constitución es de factura más ancha en cuanto al derecho a la intimidad. Pueblo v. Yip Berríos, supra, págs. 397-398; E.L.A. v. Hermandad de Empleados, 104 D.P.R. 436, 439-440 (1975).
Conforme a la trascendencia y proyección del derecho a la intimidad en nuestra jurisdicción, hemos resuelto que éste es “inherente al hombre y goza de primogenitura en nuestra descendencia constitucional”. P.R. Tel. Co. v. Martínez, 114 D.P.R. 328, 338 (1983). Tan firme es el arraigo del derecho a la intimidad en nuestro ordenamiento que, en ocasiones, éste ha prevalecido sobre otros derechos de similar jerarquía. íd., pág. 339. Por ello, este Foro no ha vacilado al expresarse sobre la naturaleza del derecho a la intimidad: “Incuestionablemente goza de primacía en la pirámide constitucional.” Id., pág. 340.
La protección contra registros, incautaciones y allanamientos irrazonables del Art. II, Sec. 10 de nuestra Constitución, supra, se garantiza primordialmente mediante el requisito de una orden o un mandamiento, expedido por *487 una autoridad judicial, antes de intervenir con el ámbito privado de un individuo. Art. II, Sec. 10, Const. E.L.A., supra; Pueblo v. Rivera Colón, supra, pág. 681. Por ello, todo registro efectuado sin una orden judicial previa se presume inválido.
Sin embargo, para que se active la referida protección constitucional es necesario que la persona intervenida tenga el derecho a abrigar, dentro de las circunstancias específicas del caso, una expectativa razonable de intimidad. Pueblo v. Yip Berríos, supra, pág. 398. Para determinar si existe tal expectativa, se requiere evaluar el lugar registrado; la naturaleza y el grado de intrusión de la intervención; el objetivo de la intervención; si la conducta de la persona indicaba una expectativa subjetiva de intimidad; la existencia de barreras físicas que restrinjan la entrada al lugar registrado; la cantidad de personas que tienen acceso a ese lugar, y las inhibiciones sociales relacionadas con éste. Pueblo v. Rivera Colón, supra, págs. 684-685.
Ante un reclamo de violación al derecho de intimidad, el criterio rector será si, a la luz de los factores mencionados, la persona alberga una expectativa razonable de intimidad. Una vez se cumple con dicho requisito de umbral, debe evaluarse la razonabilidad de la intrusión gubernamental con la intimidad de la persona, lo que requiere balancear los intereses del Estado frente a los derechos individuales. Pueblo v. Yip Berríos, supra, pág. 399. En dicho análisis, es pertinente el “menor o mayor grado de expectativa a la intimidad que nuestro ordenamiento le reconoce a una persona en determinada circunstancia”. Id.
Por otra parte, es norma firmemente establecida que las investigaciones administrativas están sujetas a la referida garantía del Art. II, Sec. 10 de nuestra Constitución, supra, contra registros, allanamientos o incautaciones irrazonables. E.L.A. v. Coca Cola Bott. Co., supra, pág. 205. De ordinario, todo registro, ya sea de índole penal o admi *488 nistrativo, se presume inválido si se realiza sin una orden judicial previa. Id., pág. 207.
Ahora bien, una de las excepciones a dicho principio constitucional es el registro consentido, el cual aplica cuando el consentimiento dado sea voluntario y prestado por quien tiene autoridad para ello. Pueblo v. Narváez Cruz, 121 D.P.R. 429, 436 (1988). Conforme a lo anterior, hemos reconocido que un tercero que no es dueño de la propiedad a ser registrada puede prestar un consentimiento válido siempre que tenga alguna autoridad común u otra relación suficiente con dicha propiedad (doctrina de autoridad real). íd., pág. 437. Por eso, si la propiedad en cuestión está bajo la posesión exclusiva de otro, el consentimiento prestado por el tercero no es válido. Id.
No obstante, no todo consentimiento prestado por quien no tiene autoridad real se considera inválido. El consentimiento se considera válido cuando el agente del orden público, actuando de buena fe, descansa en la autoridad que, de forma razonable, aparenta tener un tercero para consentir al registro (doctrina de autoridad aparente). Id., pág. 439. En estos casos, se requiere que el agente del or-den público pida a la persona que presta el consentimiento que se identifique y que dicho agente indague razonablemente respecto a la autoridad de la persona. Id., pág. 441. Debe tenerse presente, además, que cuando se invoca la “doctrina de autoridad aparente”, deben observarse rigurosamente sus requisitos. Id., pág. 443.
B. En el caso de autos, los recurridos cazaban en la finca privada del Sr. Raynier Ramírez, la cual estaba cerrada por una verja y excluía el acceso de terceros. No surge del expediente que el señor Ramírez hubiese concedido su autorización para que los Vigilantes realizaran las intervenciones en su finca. Además, tampoco surge del ex-pediente que los cazadores carecieran de la autorización del señor Ramírez para practicar el deporte en su propiedad, por lo que debemos partir de la premisa de que estaban debidamente autorizados. En estas circunstancias, los *489 cazadores albergaban una expectativa razonable de intimidad.
Es cierto que la intervención de los Vigilantes con los cazadores que se encontraban en la finca privada respondió a que los agentes escucharon unas detonaciones de armas de fuego. Sin embargo, en las circunstancias particulares del caso de autos, ello no justifica la entrada a una finca privada sin contar con una orden judicial. Adviértase que era temporada de caza y que el área en donde se encontraban los Vigilantes era un área autorizada para practicar el deporte. Ciertamente, en dichas circunstancias, la probabilidad de escuchar detonaciones de armas de caza en esa área incrementa, por lo que esto no constituye razón suficiente para justificar la intervención en controversia.
Por otra parte, surge del expediente que los Vigilantes del D.R.N.A. obtuvieron el acceso a la finca del señor Ramírez, en la que se encontraban los cazadores, mediante la autorización del señor Fabre, quien es dueño de una propiedad colindante. El señor Fabre cortó la veija que marcaba la colindancia entre su finca y la del señor Ramírez. Es tras ello que los Vigilantes pudieron intervenir con los recurridos.
No surge del expediente, sin embargo, que el señor Fabre estuviera a cargo de la finca del señor Ramírez ni que tuviese alguna relación con éste. De hecho, según declaró uno de los Vigilantes durante la vista ante el oficial examinador, el señor Fabre cortó la verja porque no tenía llave del candado de ésta, ya que lo habían cambiado. Por lo tanto, es forzoso concluir que el consentimiento prestado por el señor Fabre fue inválido, pues él no tenía autoridad real para consentir.
Igual conclusión se impone en cuanto a la aplicación de la “doctrina de autoridad aparente”, pues del expediente ante nuestra consideración no surge que haya habido alguna manifestación o representación de parte del señor Fabre a los efectos de que poseía la autoridad para permitir el registro de la finca de su vecino. Del mismo modo, no hay prueba alguna de que los Vigilantes hayan cuestio *490 nado al señor Fabre respecto a su autoridad ni de que hayan tenido información previa sobre esto. Por ende, consideramos que los Vigilantes no tenían elementos suficientes para creer, razonablemente, que el señor Fabre tenía la autoridad para consentir.
En vista de todo lo anterior, coincidimos con la determinación del Tribunal de decretar la invalidez del registro en controversia efectuado en una propiedad privada sin una orden judicial previa. El grado de intrusión del Estado en el caso de autos no puede justificarse con el interés de velar por el cumplimiento de la Ley de Vida Silvestre. Ante esto, el proceder del Tribunal le da vida al mandato constitucional que protege el derecho de intimidad de la ciudadanía y prohíbe intervenciones arbitrarias del Estado.
No obstante, estimamos importante señalar que la determinación a la cual llega este Tribunal hoy no implica que los Vigilantes estén impedidos de intervenir con los cazadores para implantar la rigurosa política pública a favor de la conservación de los recursos naturales consagrada en la Ley de Vida Silvestre. El curso de acción que toma el Tribunal responde a las circunstancias particulares de una intervención realizada en una propiedad privada sin una orden judicial previa. Adviértase que el dueño de la finca de caza puede conceder una autorización previa al D.R.N.A. para que el Cuerpo de Vigilantes entre a su propiedad. En tales casos, la autorización conferida sería suficiente para que los Vigilantes entren a la propiedad y desempeñen su labor de implantar la política pública de la Ley de Vida Silvestre. Sin embargo, sin esta autorización, y sin mediar alguna de las excepciones reconocidas, una intervención y registro sin orden en una finca privada infringe la fuerte protección del derecho de intimidad consagrado en nuestra Constitución. Por consiguiente, estamos conformes con la opinión que emite el Tribunal en el caso de autos.

 12 L.P.R.A. sec. 107 et seq. y Reglamento del Departamento de Recursos Naturales y Ambientales, Reglamento Núm. 6765 de 10 de febrero de 2004, respectivamente.

 Aunque el Departamento de Recursos Naturales y Ambientales (DRNA) denomina la Resolución como “parcial”, concluimos que es final por no quedar otro asunto por resolver.

 12 L.P.R.A. sec. 1205(b)(1).

 3 L.P.R.A. sec. 2191.

 3 L.P.R.A. sec. 2175; Hernández, Álvarez v. Centro, 168 D.P.R. 592 (2006); Otero v. Toyota, 163 D.P.R. 716, 728 (2005); Metropolitana S.E. v. A.R.Pe., 138 D.P.R. 200, 213 (1995); Viajes Gallardo v. Clavell, 131 D.P.R. 275, 290 (1992); Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).

 3 L.P.R.A. sec. 2175; Hernández, Álvarez v. Centro Unido, supra; Martínez v. Rosado, 165 D.P.R. 582 (2005); Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 132 (1998).

 San Antonio Maritime v. P.R. Cement Co., 153 D.P.R. 374, 397 (2001).

 Cruz v. Administración, 164 D.P.R. 341, 357 (2005); Martínez v. Rosado, supra; Misión Ind. P.R. v. J.P., supra.

 Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 326.

 Pueblo v. Narváez Cruz, 121 D.P.R. 429, 436 (1988).

 íd.

 H.M.C.A. (P.R.), Inc., etc. v. Contralor, 133 D.P.R. 945, 974 (1993); Pueblo v. Ramos Santos, 132 D.P.R. 363, 370 (1992); Pueblo v. Rivera Colón, 128 D.P.R. 672 (1991); E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197 (1984).

 H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra; Pueblo v. Rivera Colón, supra.

 H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra.

 Rullán v. Fas Alzamora, 166 D.P.R. 742, 771 (2006).

 Const. E.L.A., L.P.R.A, Tomo 1.

 Rullán v. Fas Alzamora, supra, págs. 770-771.

 íd., pág. 772.

 íd.

 Pueblo v. Rivera Colón, supra.

 Pueblo v. Dolce, 105 D.P.R. 422 (1976).

 3 L.P.R.A. sec. 2191.

 Véase H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra; E.L.A. v. Coca Cola Bott. Co., supra.

 Pueblo v. Ferreira Morales, supra, pág. 256.

 íd., pág. 263.

 Pueblo v. Narváez Cruz, supra, págs. 436-437.

 íd., pág. 437.

 íd.

 Pueblo v. Narváez Cruz, supra, pág. 443.

 Pueblo v. Miranda Alvarado, 143 D.P.R. 356 (1997).

 Art. VI, Sec. 19, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 440.

 No estamos en posición de concluir que el deporte de la cacería afecta nuestros recursos naturales. Por el contrario, tal deporte controla ciertas especies cuya propagación desmedida puede resultar dañina para la salud de la ciudadanía. Ejemplo de esto son las enfermedades que pueden causar ciertas aves, como: histoplasmosis, candidiasis, cryptococcosis, encefalitis St. Louis y salmonella, entre otras enfermedades. Por esto se permite la exterminación de palomas en lugares donde éstas se han convertido en una plaga durante todo el año, siempre y cuando sean exterminadas por profesionales licenciados. Para más información, véase www.aphis.usda.gov;www.osha.gov, al 16 de julio de 2009.

 Reglamento para Regir la Conservación y el Manejo de la Vida Silvestre, las Especies Exóticas y la Caza en el Estado Libre Asociado de Puerto Rico, supra, Art. 5.06(B) esc. 1 (Reglamento).

 Id., Art. 5.09C.

 12 L.P.R.A. sec. 1205(b)(1).'

 Aunque el señor Fabre haya construido la verja colindante, ello no le da la potestad para permitir la entrada del Cuerpo de Vigilantes del DRNA (Vigilantes) a una finca privada que no es de su propiedad y cuyo acceso estaba impedido por dicha veija. Además, tampoco es indicio de que éste sea el único propietario de la verja *471 colindante. Muestra de ello es que en la verja existía un portón con candado que daba acceso a la finca del señor Raynier Ramírez y del cual el señor Pabre poseía una llave. Sin embargo, el Sr. Raynier Ramírez cambió ese candado y no le dio llave del nuevo candado al señor Pabre.

 E.L.A. v. Coca Cola Bott. Co., supra.

 12 L.P.R.A. sec. 107(d). La Nueva Ley de Vida Silvestre de Puerto Rico y el Reglamento definen caza deportiva como una “[ajetividad recreativa autorizada por el Secretario en la cual el participante, llamado cazador deportivo, utiliza un arma para hacer presa un animal de caza durante las temporadas establecidas por el Secretario”. (Énfasis suplido.) Reglamento, supra, Art. 1.07, pág. 9.

 P.S.P. v. Com. Estatal de Elecciones, 110 D.P.R. 400 (1980).

 H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra; E.L.A. v. Coca Cola Bott. Co., supra.

 E.L.A. v. Coca Cola Bott. Co., supra.

 La ley también establece como uno de los deberes del Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales “[v]elar por la observancia estricta de las disposiciones de la Ley Núm. 70 del 30 de mayo de 1976 y sus reglamentos”. 12 L.P.R.A. sec. 1205(a)(1). La referida Ley Núm. 70 es la anterior Ley de Vida Silvestre, derogada por la Ley Núm. 241 de 15 de agosto de 1999 (17 L.P.R.A. see. 107 et seq.).

 Un coto de caza es una finca en la cual un cazador puede practicar el deporte a cambio de un pago al dueño o encargado de dicha finca. 12 L.P.R.A. sec. 107(x). En el coto se provee al cazador los recursos necesarios para llevar a cabo el deporte, incluyendo las armas de fuego. 12 L.P.R.A. sec. 107e. Los requisitos para la operación de este tipo de establecimiento están contenidos en la Nueva Ley de Vida Silvestre de Puerto Rico (Ley de Vida Silvestre) y en el Reglamento para Regir la Conservación y el Manejo de la Vida Silvestre, las Especies Exóticas y la Caza en el Estado Libre Asociado de Puerto Rico, Reglamento Núm. 6765 de 11 de febrero de 2004 (Reglamento Núm. 6765). Entre dichos requisitos se encuentra la presentación de un informe mensual al D.R.N.A. por parte del dueño o encargado del coto, en el cual se detalle la actividad de caza y otra información relacionada a las especies cazadas. 12 L.P.R.A. sec. 107(f). A pesar de lo anterior, debemos señalar que del expediente ante nuestra consideración no surge que existan actualmente cotos de caza en Puerto Rico.

 Cabe señalar que el Manual del Estudiante del Programa de Educación a Cazadores del D.R.N.A. enfatiza la importancia del cumplimiento con el código de ética del cazador, lo que incluye seguir las reglas de la “buena caza”, no aprovecharse injustamente de la fauna, aprovechar al máximo toda presa que obtenga y evitar que se desperdicie. Véase Manual del Estudiante del Programa de Educación de Cazadores del Departamento de Recursos Naturales y Ambientales en http:// www.drna.gobierno.pr/cazadores. Conforme a ello, se dispone que “[e]l cazador responsable demuestra respeto por la pieza que ha cobrado”, lo cual incluye cuidar la pieza para que ésta pueda consumirse y no se desperdicie. Id.
Por otro lado, el Manual dedica un capítulo al tema de la conservación y el manejo de la vida silvestre. En ese sentido, se explica que la caza ayuda a mantener las poblaciones de fauna silvestre en la capacidad de carga de su hábitat. El exceso de capacidad del número de animales cinegéticos en una población podría causar la muerte de los animales por inanición. Asimismo, la sobrepoblación de animales podría acarrear la destrucción de cultivos. Por ello, se considera que la caza es un instrumento de manejo para el control de dichas poblaciones. íd.